# CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* CLARK.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 256. Argued April 20, 23, 1900. — Decided May 28, 1900.

The record shows that the cause came on for trial without a jury, a trial by jury having been expressly waived by written consent of the parties, that a referee was duly appointed by similar consent, in accordance with the rules and customs of the District in which the trial was had, and that his findings, rulings and decisions were made those of the court. *Held,* that the question whether the judgment rendered was warranted by the facts found was open for consideration in the Circuit Court of Appeals, and is so here.

Clark contracted with the railway company for the construction of part of its road. He also contracted for the completion of his work on a day named. It was not completed till some time after that day. Clark contended that the failure was caused by the neglect of the company to procure a right of way. When the time for settlement came there were also other disputes between him and the company, which are set forth in detail in the statement of facts. The result was that Clark signed a paper in which, after stating the disputed claims in detail, it was said: "Now therefore be it known that I, the said Heman Clark, have received of and from the said Chicago, Milwaukee and St. Paul Railway Company, the sum of one hundred and seventy three thousand, five hundred and thirty

two and $\frac{49}{100}$ dollars, in full satisfaction of the amount due me on said estimates, and in full satisfaction of all claims and demands of every kind, name and nature, arising from or growing out of said contract of March 6, 1886, and of the construction of said railroad, excepting the obligation of said railway company to account for said forty thousand dollars, as herein provided." This paper after signature was given by him to the railway company, and in return they gave him a check for the balance named. Five years and more after this transaction this action was brought to recover the disputed claims. *Held*, that Clark was barred by his release from recovering the disputed sums.

The rule laid down in *Cumber* v. *Wane*, 1 Strange, 426, that where a liquidated sum is due, the payment of a less sum in satisfaction thereof, though accepted as satisfaction, is not binding as such for want of consideration, has been much questioned and qualified, and is considered so far with disfavor, as to be confined strictly to cases within it.

HEMAN Clark constructed some two hundred miles of railroad in the States of Iowa and Missouri, for the Chicago, Milwaukee and St. Paul Railway Company, under a written contract dated March 6, 1886, which is set forth in the findings hereafter referred to. During the period of construction the company paid Clark large sums of money on account. After the road was completed the Chief Engineer of the company, as was his duty under the contract, certified to the total amount that Clark had earned under the contract. This amount was $3,895,798.79. But Clark claimed also the further sum of $34,598.90 for material sold by him to the company, and certain rebates and other matters of that description, which would make the aggregate $3,930,397.69. As to the amount that should be credited to the company, the company claimed credits to the amount of $3,716,865.20, while Clark contended that the total amount that should be credited was $3,667,306.59, or $49,558.63 less than the amount claimed by the company. This latter amount was made up of two items: one of $40,000, for overtime forfeiture or penalty, and the other of $9558.63, the amount paid by the company for nut locks furnished to Clark, and used by him in the construction of the road. The company prepared an account stated, which allowed the $34,598.90, on one side of the account, and included the $40,000 and the $9558.63, on the other, and appended to it a release for Clark to sign, if he accepted the balance therein stated. The account

stated and release were sent to him with notice that upon sign-
ing and returning the same to the Vice President of the com-
pany, a check for the balance shown by the account to be due
would be sent to him. Immediately thereupon, on March 9,
1888, the account and release were returned by Clark to the
Vice President, signed and witnessed, and a check for the full
amount of such balance, $173,532.29, was at once delivered to
Clark, who indorsed and deposited it in his bank, and received
the proceeds thereof.

August 5, 1893, Clark commenced this action against the rail-
road company to recover amounts which he claimed to be due
him on account of the construction of the road, and for extra
work and other claims growing out of the contract. The com-
plaint originally contained three causes of action, but by amend-
ment the number was increased to six. The second, third, fourth
and sixth causes of action, and part of the first cause, were
eliminated from the case by the judgment, and Clark recovered
on the two items of $40,000 and $9558.63 under the first cause
of action, and also under the fifth cause for $2425, a matter
arising subsequent to the release, and not included within it.

The action was originally brought in the state court, but was
removed on the application of the company to the Circuit Court
of the United States for the Southern District of New York.
After issue was joined, the cause came on for trial at a regular
term of the Circuit Court. Trial by jury was waived by writ-
ten consent of the parties, filed with the clerk, and the cause
was referred to a referee, who in due time made his report and
findings. The court adopted the findings of the referee and
ordered judgment thereon for the sum of $80,479.35. This
judgment was subsequently affirmed by the Circuit Court of
Appeals. 92 Fed. Rep. 968.

The findings of fact and conclusions of law of the referee were
as follows:

## "Findings of Fact.

"1. That in the month of March, 1886, the defendant, the
Chicago, Milwaukee and St. Paul Railway Company, made and
entered into a contract in writing with the plaintiff, dated the

6th day of March, 1886, for the construction of a line of railroad from a point in the city of Ottumwa, Iowa, to a place called Harlem Station, in the State of Missouri, a distance of about 202.8 miles, to be completed on the first day of August, 1887, a copy of which contract is hereto annexed, marked 'A.'

" 2. That immediately after the execution of the said contract the plaintiff proceeded to carry out and perform the same, and did carry out and perform the same, except a portion thereof otherwise agreed between the parties, and substantially completed the same on or about the 1st day of November, 1887, and the same was duly accepted by the defendant on or about the first day of March, 1888.

" 3. That on or about the third day of March, 1888, the Chief Engineer in charge of said work under said contract .made a final certificate and estimate, which is copied in full in the twentieth and twenty-first finding of fact last asked by the defendant, and by this reference is made part hereof.

" 4. That said certificate and estimate were delivered to the defendant, but were never delivered to the plaintiff or any of his agents, and were not seen by the plaintiff or any of his agents or brought to his knowledge otherwise than by the reference thereto in the receipt of March 9, 1888, hereinafter referred to, until the trial of this action.

" 5. That the consideration for the performance of said contract originally mentioned in said contract was $3,914,600, but before the execution of said contract by the plaintiff, by and with the consent of the defendant, the consideration was changed and made $3,954,600.

" 6. That the plaintiff made and entered into a supplemental contract whereby he agreed with the defendant to complete his performance of said contract on or before June 1, 1887, and to allow the said defendant, by way of forfeiture, in case the said railway were not so completed by the 1st of June, 1887, the sum of $40,000.

" 7. That the defendant failed to furnish the plaintiff with rights of way as by said contract it had agreed to do in time to enable the plaintiff to complete his contract prior to the 1st of June, 1887, or prior to the 1st of August, 1887, but on the con-

trary, delayed the plaintiff in the performance of said contract at a point upon the said road known as Minneville until October 27, 1887, by reason of the neglect, failure and omission of the defendant to obtain the necessary right of way at said point so as to permit the construction of the road and completion of the contract at said point.

" 8. That the plaintiff was thereby prevented from completing his contract on or prior to August 1, 1887, and also on or prior to June 1, 1887, by the negligence, omission and fault of the defendant.

" 9. That during the progress of the work the defendant purchased and furnished to the plaintiff and charged him for patented nut locks, for which the defendant paid $9558.63.

" 10. That the said nut locks so furnished by the defendant were used by the plaintiff in the construction of the road.

" 11. That there are no provisions in the contract which require that the plaintiff, and the plaintiff never agreed, that he should use in the construction of the railroad under said contract, any patented nut locks.

" 12. That the plaintiff was ordered by the defendant to put such nut locks on the road at the beginning of the work. That he protested against their use, and finally yielded and used them in track laying upon the promise that the matter of the charge for said nut locks should be adjusted after the completion of the contract.

" 13. That upon the 9th day of March, 1888, the plaintiff signed and caused to be delivered to a representative of the defendant a paper, writing or receipt presented to him by the defendant for signature, of which the following is a copy ; and upon the signature thereof by said Clark, and its delivery by him to the defendant, the plaintiff was paid by the said defendant the said sum named therein of $213,532.49, less the sum of $40,000 claimed in said paper to be retained for forfeiture in not completing performance of his work under said contract on or prior to June 1, 1887, and the sum of $3,626,865.20 included therein embraces said sum of $9558.63 claimed by defendant to be due for nut locks. Said $40,000 was deducted, and the actual amount so paid was $173,532.49.

"Whereas, a final estimate has been made by D. J. Whitte-more, Chief Engineer of the Chicago, Milwaukee and St. Paul Railway Company, of all the work done and material furnished under the contract made between said railway company and Heman Clark, bearing date March 8, 1886, for the construction of the railroad from Ottumwa, in Iowa, to the Missouri River, including all extra work performed and material furnished of every kind and description, which estimate, with the prior monthly estimates, less deductions made for work not done and work assumed by said company, amounts to $3,895,798.79 ;

"And whereas, the further sum of $34,598.90 should be credited to said Clark for materials sold by him to said com-pany, and certain rebates and other matters of that descrip-tion, making, with the amount of said estimates, the sum of $3,930,397.69 ; .

"And whereas, the said Chicago, Milwaukee and St. Paul Railway Company has paid the said Clark to apply on said con-tract, in money, material, labor and transportation, the sum of $3,626,865.20 ;

"And whereas, by the terms of section 4, article 13, of said contract, said Clark was to be charged in addition for trans-portation the sum of $50,000 ;

"And by a supplemental contract was to allow the said rail-way company, by way of forfeiture in case said railway was not completed by the first day of June, 1887, the further sum of $40,000 ;

"Making the amount paid on said contract, together with the allowance of said transportation and the allowance of said for-feiture, the sum of $3,716,865.20 ;

"Leaving the amount still due said Clark on said contract, the sum of $213,532.49 ;

"And, whereas, in and by said contract it was provided that the said Heman Clark, party of the first part, should save the said railway company free and harmless from all claims that might be made against said railway company for liens of work-men and claims of sub-contractors, and from all damages arising from not keeping sufficient fences to preserve crops and restrain cattle, and from all damages for cattle or other domestic

animals killed or injured, and from all damages suffered by said sub-contractors and employés while engaged upon said work, of which said class of claims, about $40,000 in amount, have been made upon and are now pending in courts by divers claimants against said railway company, and the sum of $40,000 of the amount so due, as aforesaid, under said contract to the said Heman Clark, has been reserved and set aside by said railway company, as indemnity or security for the payment of said claims and of such other claims of the same class as hereafter may be made, in case said claimants, or any of them, recover judgments against said railway company, and the said $40,000, or the balance thereof, after paying and settling such claims as may be established against said railway company, is to be paid over to the said Heman Clark as soon as said claims are satisfied or said railway company suitably indemnified from any loss on account of the same, which $40,000 deducted from the sum of $213,532.49, so, as aforesaid, due said Clark, leaves due and owing by said railway company and now payable on said contract to said Heman Clark, the sum of $173,532.49:

" 'Now, therefore, be it known, that I, the said Heman Clark, have received of and from the said Chicago, Milwaukee and St. Paul Railway Company the sum of one hundred and seventy-three thousand five hundred and thirty-two and $\frac{49}{100}$ dollars ($173,532.49), in full satisfaction of the amount due me on said estimates, and in full satisfaction of all claims and demands of every kind, name and nature, arising from, or growing out of, said contract of March 6, 1886, and of the construction of said railroad, excepting the obligation of said railway company to account for said forty thousand dollars, as hereinbefore provided.

" 'HEMAN CLARK.

" 'WM. C. EDWARDS.'

" 14. That said receipt and paper contained an accurate, truthful and undisputed account of all dealings between said parties except in the matter of the $40,000 deducted for time forfeiture, the $9558.63 for nut locks embraced in the $3,626,865.20, and the lumber hereinafter referred to, and herein valued at

$2425.   Besides  the above, the defendant has paid the $40,000 reserved as indemnity or security for the payment of claims against Clark, and in addition thereto upon like accounts, the sum of $521.75.

"15. That at the time of the signing and delivery of said last-mentioned paper the final certificate or estimate of the Chief Engineer under the contract had not been delivered to the plaintiff or any of his agents by the defendant or the said Engineer, and the contents thereof were not known to the plaintiff, other than by the reference thereto contained in said receipt of March 9, 1888.

"16. That no other final settlement of the accounts under said contract had been had between the plaintiff and the defendant at the time that the last-mentioned paper was signed and delivered.

"17. That at the time of the signing and delivery of said last-mentioned paper, the question of the liability of the plaintiff for nut locks, which had been left by the parties to this action open for settlement and adjustment until after the completion of the work under said contract, and had been referred by the defendant to the Chief Engineer under the said contract; had not been passed upon by him; that the said Chief Engineer had referred the question for the opinion of the defendant's counsel, who had not at said time given his opinion in relation thereto.

"18. That no account was ever, otherwise than by said paper and the receipt of said money, stated of the transactions under and connnected with said contract between the plaintiff and the defendant.

"19. That, in or about the months of March and April, 1888, the plaintiff was the owner of 97,000 feet B. M. bridge timber then in the yard of the defendant at Chillicothe and along the line of the railroad.

"20. That the said lumber did not conform to the standard of the defendant, and was not purchased by the defendant from the plaintiff, or allowed in the final certificate of the Chief Engineer, under the contract in this section to the plaintiff.

"21. That, in and about the month of June, 1888, the de-

fendant took possession of the said lumber and converted the same to their own use without assent or knowledge of the plaintiff.

" 22. That the value of the said lumber at the time of the taking, in June, 1888, was $2425."

"Conclusions of Law.

" 1. That the defendant is not entitled to charge the plaintiff, or to retain and deduct from the amount earned and payable to the plaintiff under the said contract the sum of $40,000 as a forfeiture or liquidated damages for not completing the contract upon June 1, 1887.

" 2. That under the facts proved in this case, the plaintiff is not legally liable to the defendant for any damages for failure to complete the contract within the contract time or the time agreed upon, for the reason that the plaintiff was prevented by the negligence of the defendant and its omission to procure the necessary right of way, from completing the said work in such time.

" 3. That the plaintiff is not liable to the defendant for the sum of $9558.63, the cost of patent nut locks furnished by the defendant to the plaintiff and used by him in the performance of the said contract.

" 4. That there was no obligation imposed by the contract upon the plaintiff to furnish and pay for patent nut locks to be used in the construction of the said road.

" 5. That the plaintiff is not legally indebted to the defendant in any sum whatever for patent nut locks furnished by the defendant and used in the construction of the railroad under said contract.

" 6. That the plaintiff is entitled to recover from the defendant the sum of $2425, with interest from June 1, 1888, for the conversion by the defendant of lumber belonging to the plaintiff.

" 7. That the signing and delivery by the plaintiff of the receipt on or about the 9th day of March, 1888, and the acceptance of the check of $173,532.49, under the facts and circumstances proved in this case were, as to the two sums of $9558.63, charged for nut locks, and $40,000 charged by way of forfeiture for non-

performance in time, wholly without consideration, and in violation of the contract between the parties, and do not constitute any bar to the recovery of the plaintiff for the sums of $9558.63 and $40,000 otherwise as due under the contract.

"8. That the signing and delivery of said receipt, and the acceptance of the check thereunder, do not constitute a legal payment or accord and satisfaction of the said sums of $9558.63 and $40,000, or either of them, or any part or either of them.

"9. That no account of the transactions under this contract, and of the claims sued on in this action, was ever had or stated between the parties to this action, otherwise than by said receipt or paper of March 9, 1888.

"10. That the plaintiff is entitled to recover the amount certified by the Chief Engineer of $3,895,793.79 without the deduction claimed by the defendants for nut locks of $9558.63, and without allowance to the defendant by way of forfeiture for non-completion of the railway on the 1st day of June, 1887, said sums together amounting to $49,558.63 with interest from March 9, 1888, and is also entitled to recover for timber used by the defendant on the 30th day of June, 1888, to the amount of $2425 with interest from June 30, 1888, the whole amounting at the date of this report, viz., the 4th day of December, 1897, to the sum of $81,305.88, for which with interest from this date and disbursements the plaintiff is entitled to judgment, less amount paid by the defendant in excess of the reserved $40,000, $521.75, with interest from and to the same date, being in all this day $826.53.

"There will be judgment, therefore, for the plaintiff for $80,479.35 with interest and costs, interest to be computed from December 4, 1897."

In addition to the foregoing findings of fact, twenty-seven additional findings of fact were made at the request of defendant. They related to, or set forth, the execution of the contract for the construction of the road; a supplemental agreement by which the sum of $40,000 was to be deducted from the contract price if the road was not completed by June 1, 1887; the failure of Clark to complete the road in that time; the final estimate and certificate of the Chief Engineer of the company;

the sending of the statement of account and release to Clark, with the information that, on the same being signed and returned by him, a check for the balance due him, $173,549, would be sent to him; the return of said statement and release signed by Clark, and the sending to him of a check for such balance, March 9, 1888; the deposit by Clark of said check and his retention of the amount paid him thereon; the expenditure of the $40,000, (and the $521.75 besides,) reserved by the company, with Clark's consent, at the time of the settlement, to meet unpaid claims against Clark, incurred in the construction of the road; the furnishing of nut locks to Clark by the company for the construction of the road; and that the company did not require Clark to furnish any material or perform the work of furnishing or erecting any structures of a more expensive design than required of him by the contract for the construction of the road, otherwise than as set forth in the final estimate of the Chief Engineer.

Amendments to the complaint were allowed by the referee over defendant's objection and exception, and approved by the court under like objection and exception.

The errors assigned were that: (1) The court below erred in holding that the findings of fact supported the judgment as to the item of $9558.63 for nut locks, and the item of $40,000 for time forfeiture; (2) the court below erred in holding that there was no consideration for the settlement made by the parties as to the items of $9558.63 for nut locks, and $40,000 for time forfeiture; (3) the court below erred in holding that the question whether there was any evidence in the record to sustain the finding that the defendant in June, 1888, wrongfully took possession of certain lumber and converted it to its own use was not reviewable; (4) the court below erred in holding that it was proper to allow plaintiff to amend his complaint on the trial against defendant's objection, by adding thereto an action sounding in tort and to recover thereon.

*Mr. Burton Hanson* for the Railway Company. *Mr. George R. Peck* was on his brief.

*Mr. L. Laflin Kellogg* for Clark. *Mr. Alfred C. Petté* was on his brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The record shows that the cause came on before the District Judge, holding the Circuit Court, for trial, " without a jury, and a trial by jury having been expressly waived by the written consent of the parties duly filed ; " that a referee was appointed by written consent in accordance with the modes of procedure in such cases in the courts of record of New York, and with the rules of the Circuit Court; and that his findings, rulings and decisions were made those of the court. Under these circumstances the question whether the judgment rendered was warranted by the facts found was open for consideration in the Circuit Court of Appeals, and is so here, and that is sufficient for the disposition of the case. *Shipman* v. *Mining Company*, 158 U. S. 356.

By the writing executed and delivered by him, March 9, 1888, Clark acknowledged the receipt of $173,532.49 " in full satisfaction of the amount due me on such estimates, and in full satisfaction of all claims and demands of every kind, name and nature, arising from, or growing out of such contract of March 6, 1886, and of the construction of said railroad," excepting an item not material here. Five years and nearly five months after the receipt of the money and the execution and delivery of the discharge, this action was instituted. There was no finding or contention that the settlement was procured by fraud, or duress, or was the result of mutual mistake; nor was there any finding that Clark did not have full knowledge of all the facts at the time he signed and delivered the release, and the presumption was that he had such knowledge. But the proposition is that the release was given without consideration, and that Clark was entitled to recover so far as the items of $40,000 and $9558.63 were concerned, on the principle that where a liquidated sum is due, the payment of a less sum in satisfaction thereof, though accepted as satisfaction, is not binding as such for want of consideration. *Cumber* v. *Wane*, 1 Strange, 426. The rule therein laid down has been much questioned and qualified. *Goddard* v. *O'Brien*, 9 Q. B. Div. 37;

*Sibree* v. *Tripp*, 15 M. & W. 23 ; *Couldery* v. *Bartrum*, 19 Ch. D. 394 ; *Foakes* v. *Beer*, 9 App. Cas. 605 ; Notes to *Cumber* v. *Wane* in Smith's Leading Cases, vol. 1, 606 ; 12 Harvard Law Review, 521.

The result of the modern cases is that the rule only applies when the larger sum is liquidated, and when there is no consideration whatever for the surrender of part of it; and while the general rule must be regarded as well settled, it is considered so far with disfavor as to be confined strictly to cases within it.

In *Johnston* v. *Brannan*, 5 Johns. 268, 271, it was referred to as " that rigid and rather unreasonable rule of the old law ; " and in *Kellogg* v. *Richards*, 14 Wend. 116, where the acceptance of a promissory note of a third party for a less sum was held to be a good accord and satisfaction, Mr. Justice Nelson, then a member of the Supreme Court of New York, said : " It is true there does not seem to be much, if any, ground for distinction, between such a case and one where a less sum of money is paid and agreed to be accepted in full, which would not be a good plea. . . . The rule that the payment of a less sum of money, though agreed by the plaintiff to be received in full satisfaction of a debt exceeding that amount, shall not be so considered in contemplation of law, is technical, and not very well supported by reason. Courts therefore have departed from it upon slight distinctions."

So in *Brooks* v. *White*, 2 Metcalf, 283, the Supreme Judicial Court of Massachusetts said : " The foundation of the rule seems therefore to be, that in the case of the acceptance of a less sum of money in discharge of a debt, inasmuch as there is no new consideration, no benefit accruing to the creditor, and no damage to the debtor, the creditor may violate, with legal impunity, his promise to his debtor, however freely and understandingly made. This rule, which obviously may be urged in violation of good faith, is not to be extended beyond its precise import; and whenever a technical reason for its application does not exist, the rule itself is not to be applied. Hence judges have been disposed to take out of its application all those cases where there was any new consideration, or any collateral bene-

fit received by the payee, which might raise a technical legal consideration, although it was quite apparent that such consideration was far less than the amount of the sum due."

To same effect, Ranney, J., in *Harper* v. *Graham*, 20 Ohio, 105; *Jaffray* v. *Davis*, 124 N. Y. 164; *Smith* v. *Ballou*, 1 R. I. 496; *Mitchell* v. *Wheaton*, 46 Conn. 315; *Seymour* v. *Goodrich*, 80 Va. 303.

In some of the States the contrary rule has been established by statute. Ala. Code, §2774, c. 10; Cal. Civ. Code, §1524; Georgia Code, §3735; Maine Rev. Stat. c. 82, §45; N. Car. Code, §574, c. 7, art. 5; Tenn. Code, 1884, §4539, c. 3, art. 4; Va. Code, 1887, c. 134; *Weymouth* v. *Babcock*, 42 Maine, 42; *Memphis* v. *Brown*, 1 Flippin, 188; *McArthur* v. *Dane*, 61 Ala. 539.

The findings of fact bearing on the items of $40,000 for forfeiture, and $9558.63 for nut locks, exclude any other inference than that there was a dispute between the parties in respect to those items as to the facts on which the claim for their allowance was based. This being so, it is insisted that the total balance of $223,091.02, (as it would have been if $9558.63 had not been deducted,) cannot be held to have been liquidated as a whole, that is, agreed upon by the parties or fixed by operation of law, and that the contention cannot be sustained that where there is a dispute as to an aggregate amount due, and the debtor offers to pay so much thereof as he concedes to be correct, and the creditor accepts, is paid and releases, nevertheless the creditor can afterward assert the disputed part of his claim on the ground that he has only received what was undeniably due him.

In *United States* v. *Bostwick*, 94 U. S. 53, 67, it was said that: "Payment by a debtor of a part of his debt is not a satisfaction of the whole except it be made and accepted on some new consideration;" while in *Baird* v. *United States*, 96 U. S. 430, it was held that if the debt be unliquidated and the amount uncertain, this rule does not apply. "In such cases the question is whether the payment was in fact made and accepted in satisfaction."

In *Fire Insurance Association* v. *Wickham*, 141 U. S. 564, 577, Mr. Justice Brown stated the doctrine thus: "The rule is

well established that where the facts show clearly a certain sum to be due from one person to another, the release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a *bona fide* dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void."

In this case it cannot be said that at the time the release was executed there was no good reason to doubt that these items were open to dispute. The good faith of the company in claiming their allowance is not impugned, and as Judge Lacombe said : " Both items were legitimate matters of dispute, and unless settled by agreement of parties, might fairly be brought by either party into court."

And the cases are many in which it has been held that where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole.

In *Fuller* v. *Kemp*, 138 N. Y. 231, where certain items of an account were disputed, and certain items were undisputed, and defendant paid plaintiff only the amount of the undisputed items, the court held that the dispute over certain of the items made the account an unliquidated one, and that plaintiff, by accepting the amount of the undisputed items with notice that it was sent as payment in full, was precluded from recovering the balance of his demand.

*Nassoiy* v. *Tomlinson*, 148 N. Y. 326, 330, is to the same effect, and the court said : " A demand is not liquidated even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper

amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction."

In *Ostrander* v. *Scott*, 161 Ill. 339, plaintiff had an account against defendant amounting to $5282.58, the items of which were not in dispute, but defendant claimed that he was entitled to be allowed the sum of $1210 for commissions, and accordingly he sent his check for the difference to plaintiff, at the same time notifying him that it was sent in settlement of his account in full, and if not accepted as such to return it. The check was retained by plaintiff, and he afterwards brought suit against defendant to recover the amount withheld, but the Supreme Court of Illinois held that there could be no recovery, and that an account cannot be considered as liquidated, so as to prevent the receipt of a less amount as payment from operating as a satisfaction, where there is a controversy over a set-off and the amount of the balance.

In *Tanner* v. *Merrill*, 108 Mich. 58, plaintiff sought to recover a sum which had been deducted from his wages by defendants, his employers. The amount of his wages was not disputed, but the right to make any deduction was questioned. Plaintiff received the amount of his wages less the deduction, and gave a receipt in full, and afterwards brought suit to recover the balance on the ground that, having only received the amount admitted to be due, there was no consideration for the release as to that which was disputed. The Supreme Court of Michigan held that the plaintiff could not recover, and that the rule that a receipt of part payment to be effective in the discharge of the entire debt must be rested upon a valid consideration, is limited to cases where the debt is liquidated by agreement or otherwise; that a claim any portion of which is in dispute cannot be considered to be liquidated within the meaning of the rule; and that a receipt in full, given upon payment of the undisputed part of the claim, after a refusal to pay another part which is disputed, is conclusive as against the right of the creditor to recover a further sum, in the absence of mistake, fraud, duress or undue influence.

Without analyzing the cases, it should be added that it has

been frequently ruled by this court that a receipt in full must be regarded as an acquittance in bar of any further demand in the absence of any allegation and evidence that it was given in ignorance of its purport, or in circumstances constituting duress, fraud or mistake. *De Arnaud* v. *United States*, 151 U. S. 483; *United States* v. *Garlinger*, 169 U. S. 316, 322; *United States* v. *Adams*, 7 Wall. 463; *United States* v. *Child*, 12 Wall. 232; *United States* v. *Justice*, 14 Wall. 535; *Baker* v. *Nachtrieb*, 19 How. 126.

The general principle applicable to settlements was thus expressed by Mr. Justice Clifford, in *Hagar* v. *Thomson*, 1 Black, 80, 93: "Much the largest number of controversies between business men are ultimately settled by the parties themselves; and when there is no unfairness, and all the facts are equally known to both sides, an adjustment by them is final and conclusive. Oftentimes a party may be willing to yield something for the sake of a settlement; and if he does so with a full knowledge of the circumstances, he cannot affirm the settlement, and afterwards maintain a suit for that which he voluntarily surrendered."

But apart from the controversy over the two items of $40,000 and $9558.63, which was composed by the release, there was an item of $34,558.90 credited to Clark in the final account, the allowance of which, the company contends, furnished ample consideration therefor, although the adequacy of the consideration is not, in such cases, open to inquiry.

The referee found: "That no other final settlement of the accounts under said contracts had been had between the plaintiff and the defendant at the time the said last-mentioned paper was signed and delivered." "That no account was ever, otherwise than by said paper and the receipt of said money, stated of the transactions under and connected with said contract between the plaintiff and the defendant;" and also as a conclusion: "That no account of the transactions under this contract, and of the claims sued on in this action, was ever had or stated between the parties to this action, otherwise than by said receipt or paper of March 9, 1888." The release in question allowed to Clark, that is, debited the company with, the sum of $34,598.90,

"for materials sold by him to said company, and certain rebates and matters of that description;" and charged Clark, that is, credited the company, with $40,000 by way of forfeiture, and $9558.63 for nut locks. It was in this respect, in effect, a statement of cross-demands. The $40,000 was specifically described and the $9558.63 was included in the total credits stated.

That this contractor, carrying on the work of building two hundred miles of railroad, and receiving payments on vouchers from time to time, must have been aware from his own books and papers that the $9558.63 was thus included, can hardly be reasonably denied, especially as he had objected to being charged with it. Indeed we do not understand that there is any suggestion that Clark was ignorant of any part of the account.

As to the $34,558.90, it appears from the contract, and final certificate and estimate, which are set forth in the principal or additional findings, that this item represented no part of the work specified under the contract, nor extra work, nor materials ordered by the company, and that it was not included in the contract or in the certificate and final estimate.

As was said by Lacombe, J., who delivered the principal opinion below : " Indeed it is plain to a demonstration from the findings, that the item in question was not included either in the original contract or in the extra work, and must represent an additional and independent contract of sale." And the learned judge further said : " From what has been said before, it is plain that, if at the time of the transactions relied upon as showing an accord and satisfaction, this sum of $34,598.90 so allowed to claimant represented an unliquidated item, the amount of which he would have to establish by evidence in case he had sued to recover it, its allowance to him upon the settlement of March 9, 1888, would be a sufficient consideration to uphold that settlement against him as an accord and satisfaction of all his claims." There was no finding that this amount had ever been agreed upon or liquidated by the parties in a manner that would have entitled Clark to have recovered the amount from the company as an independent item, otherwise than by the statement of it in the account preceding, and which formed a part of the receipt and acknowledgment of satisfac-

tion which Clark executed and delivered to the company March 9, 1888. Nor was there any finding showing, or tending to show, that the company would have placed that sum to Clark's credit except as an item in an account which credited the company with the two charges for nut locks and forfeiture.

But the Circuit Court of Appeals held that because of the fourteenth finding of fact, it must be assumed that the referee was satisfied from the testimony, though he did not so find in terms, that the prior transactions between the parties were such that this sum of $34,558.90 was as much liquidated as was the sum of $3,895,798.79, to which the Chief Engineer had certified. Judge Lacombe said, referring to this particular item and to the fourteenth finding of fact: "By what process it was so liquidated does not appear in the findings. We must take his finding, therefore, as conclusive upon the question, and assume that either by an agreement for price in advance, or subsequently by entering into some binding agreement as to the sum to be paid, the defendant had lost the right to throw the plaintiff into court as to that item."

The fourteenth finding of fact was "that said receipt and paper contain a correct, truthful and undisputed account of all dealings between said parties except in the matter of the $40,000 deducted for time forfeiture, the $9558.63 for nut locks embraced in the $3,626,865.20, and the lumber hereinafter referred to, and herein valued at $2425." If this finding means that the statement of account was incorrect, untruthful and disputed as to the two items, it does not affirmatively say so, and if construed as amounting to that, it was not found that Clark did not have full knowledge thereof at the time he received the money and made the settlement. If it means that the statement of account as to these items was disputed, then the contention is a reasonable one that such dispute was a sufficient consideration to support the settlement in its entirety. But we must decline to accept the view that because of this finding it should be assumed, without any finding to that effect, that there had been prior transactions between Clark and the company, by which the item of $34,558.90 was liquidated, for it is explicitly declared by the referee that no account of the transactions

under the contract, and of the claims sued on in this action, was ever had or stated between the parties, otherwise than by the paper of March 9, 1888. The value of the materials, rebates and other matters covered by this item may not have been disputed, but it did not follow that the company was obliged to purchase the materials or to allow the rebates, or that the amount thereof had been previously agreed to ; nor that liability therefor might not have been contested if Clark had declined to sign the proposed acknowledgment of satisfaction. We must remember that Clark knew all about the account; he knew what the company claimed, and what he claimed, yet he accepted the check and signed the release without even a protest.

The word "liquidated" is used in different senses, and as applicable here means made certain as to what and how much is due ; made certain by agreement of parties or by operation of law. We are of opinion that it would be going altogether too far to treat the fourteenth finding, segregated from the others, as equivalent to a determination that the $34,558.90 had been liquidated independently of the whole account as stated.

And, on the face of the findings, we think the credit in Clark's favor, taken in connection with the credits in the company's favor, put this adjustment beyond the reach of this belated attempt to overhaul it, and that Clark was barred by his release from recovering in this action the $40,000 and the $9558.63, as having been improperly deducted.

As to the sum of $2425, that was the amount of a claim arising after the release was signed, and not included within it. There was some evidence tending to sustain the findings of the referee in support of this item, and we agree with the Circuit Court of Appeals that no error was committed in the matter of amending the complaint, and in holding that a recovery could be had for this amount under the complaint as amended.

The judgment of the Circuit Court of Appeals for the Second Circuit is reversed, with costs; the judgment of the Circuit Court for the Southern District of New York is also reversed, and the cause remanded to the latter court, with a direction to enter judgment in favor of plaintiff and against defendant, for

$2425, with interest from June 30, 1888, less the sum of $521.78, with interest from the same date; the costs of the Circuit Court of Appeals to be paid by defendant in error therein; and the costs in the Circuit Court to be adjusted as to that court may seem just under the circumstances.

*Ordered accordingly.*