### BAGNELL et al. v. IVES.

(Circuit Court, M. D. Pennsylvania. January 9, 1911.)

No. 96, May Term, 1907.

1. CORPORATIONS (§ 265*)—JOINDER OF PLAINTIFFS—ACTION TO ENFORCE LIABILITY OF STOCKHOLDER.

Owners of separate judgments against an insolvent Missouri corporation, each entitled under the statutes of that state to maintain an action against any stockholder of such corporation whose stock is not fully paid for to recover the amount due thereon to the extent of his judgment, cannot join in such an action against a stockholder; their causes of action being personal and several.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 265.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRUSTS (§ 160*)—JURISDICTION TO APPOINT TESTAMENTARY TRUSTEES—PENNSYLVANIA STATUTE.

Under the statutes of Pennsylvania (Act June 14, 1836 [P. L. 632] § 15, and Act April 22, 1846 [P. L. 483] § 1), a register of wills had no authority to appoint testamentary trustees for the estate of minors, and trustees so appointed had no power to bind the estate by any contract.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 160.*]

3. TRUSTS (§ 239*)—JOINT TRUSTEES—CONTRACTS—NECESSITY OF JOINT ACTION.

Where two joint trustees were appointed for the estate of minors, one acting alone had no authority to purchase stock in a corporation so as to bind the estate as a stockholder.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 346; Dec. Dig. § 239.*]

4. TRUSTS (§ 217*)—INVESTMENT OF TRUST FUNDS—ILLEGAL PURCHASE OF CORPORATE STOCK.

Under Const. Pa. art. 3, § 22, which prohibits any law authorizing trustees to invest the trust funds in the stocks of any private corporation, the act of a trustee for the estate of minors in purchasing stock of such a corporation of another state for the estate, or accepting it in payment of a debt, was illegal and did not bind the estate as a stockholder.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301-309; Dec. Dig. § 217.*]

5. CORPORATIONS (§ 243*)—STOCKHOLDERS—LIABILITY FOR UNPAID SUBSCRIPTION—ILLEGAL PURCHASE BY TRUSTEE.

The fact that a trustee who was prohibited by law from investing the trust funds in the stock of a corporation took such stock in payment of a debt did not vest the estate with such ownership as makes it liable for what may be due thereon for the benefit of the corporation's creditors; it subsequently appearing that the stock was not paid for.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 243.*]

At Law. Action by William Bagnell and O. P. Laxton against Albert G. Ives, trustee. On trial by the court without a jury. Judgment for defendant.

W. J. Torrey and B. F. Babbitt, for plaintiffs.
C. B. Little, for defendant.

ARCHIBALD, District Judge. This is an action at law by judgment creditors of the Logan Live Stock Company, an insolvent Missouri corporation, to enforce against the estate of Marjorie S. and Kenneth G. Collins, minor grandchildren of Mrs. Jane K. Collins, late of Cambridgeport, Mass., deceased, in the hands of the defendant, as their trustee, an alleged liability of $2,400 due and unpaid on the common stock of the said company. The case by agreement was tried to the court without a jury, and the following are found to be the facts, in the nature of a special verdict:

By her will duly probated November 23, 1897, at Cambridgeport, Mass., the place of her residence, Mrs. Jane K. Collins bequeathed the residue of her estate, after certain specific legacies, one-half to her only surviving son, Frederick K. Collins, who was appointed her executor, and one-half in trust for her two grandchildren, Marjorie S. and Kenneth G. Collins, children of a deceased son, the present minors, subject to the payment of $2,000 to their mother, Florence

G. Collins, and the like further sum to her, later, appointing as trustee her son, Frederick K. Collins, or, in case of his inability to act, certain others in succession, in the event of either of them not accepting or qualifying. The trust for the children was an active one, and the testatrix left separate specific instructions with regard to its management. This appears by the recitals in the will; but the instructions are not embodied in it, and there is no other proof of them. It is, however, provided in the will that the trustee shall be excused from filing an account of the administration of the trust, in the place where the testatrix's will was probated; it being stated that the trustee, in this regard, would be subject to the orphans' court of the place where the cestuis que trustent resided. Each of the persons named in the will as trustee declined to act, and a petition was thereupon presented, on February 28, 1898, with a proof of the will, to the register of wills of Lackawanna county, Pa., at Scranton, where the children were residing, upon which the register appointed as joint trustees, Mrs. Florence G. Collins, their mother, and Col. Herman Osthaus, a member of the bar of that county, both of whom accepted the trust, and were both acting as trustees when the present action was instituted.

This action was brought April 13, 1907, against Col. Osthaus as trustee as the sole defendant; no notice being taken of the other trustee, Mrs. Florence G. Collins. A year later, on April 18, 1908, Col. Osthaus died, and on due petition to the orphans' court of Lackawanna county, Pa., Wallace Ruth was appointed in his place, and duly substituted as defendant of record, and, later on, Mr. Ruth having resigned, Albert G. Ives, the present defendant, was appointed trustee by the same authority, and duly substituted.

The right to recover in this case is predicated upon certain things which occurred with regard to the estate in the lifetime of Col. Osthaus. There was owing to Mrs. Jane K. Collins, at the time of her death, from one Alexander Dow, some $5,600, exclusive of interest, which the executor had endeavored to collect, without success, and regarded as desperate. Mr. Dow's total indebtedness to all his creditors was about $30,000, which he was owing to a number of people, and had no immediate means of satisfying. He was interested, however, in the Logan Live Stock Company, of Piedmont, Mo., which was incorporated under the laws of that state, with a capital of $20,-000, for the purpose of buying, selling, and dealing in cattle and live stock; his wife owning one half of the capital stock of the company, and, with the exception of two shares, Mr. Dow owning the other half. After being in business for a year, under the management of Mr. Dow, the company had not proved a success. But Mr. Dow was hopeful of its prospects, and in October, 1901, made a proposition to his creditors, including Mrs. Collins' executor, by which he offered to pay what he owed in stock of the company at par, provided they would subscribe and pay for one quarter as much more, which would give that amount of new capital to go into the business. His idea was to increase the capital of the company from $20,000 to $60,-000, of which $10,000 was to be preferred stock, to be paid for in

cash, and $30,000 common, to be turned over in payment of his indebtedness. Following this out, after some considerable delay, in May, 1902, the increase of capital was made; the certificate of increase, which was filed with the Secretary of the State, as required by law, reciting that one-half had been paid in money, which was in the hands of the directors, although the fact is that nothing had been paid upon it.

The proposition of Mr. Dow was submitted to Col. Osthaus, as trustee, by Mr. Collins, the executor, and after extended correspondence back and forth, between them and Mr. Dow, and numerous inquiries with regard to the prospects of the company, it was deemed advisable, both by Mr. Collins and Col. Osthaus to accept the offer to the extent of $4,800; this being their only hope of realizing any part of the debt, which was recognized by both of them as otherwise uncollectible. Col. Osthaus thereupon took and paid as trustee for $600 of preferred stock, and got $2,400 of common—240 shares at $10, a share—which was accepted in payment of that much of his part of the Dow indebtedness. And Mr. Collins, as executor and legatee of the other half, did likewise. But, except one F. E. Smith, tl were the only creditors who did so, although they did not know this. A certificate for the 240 shares, under the seal of the company, was duly issued to Col. Osthaus; but by mistake he was designated as executor, and not as trustee therein, and on August 29, 1902, he receipted as trustee for it. He also participated, by proxy, in the annual meeting held in January following.

The certificate for the common stock, which was issued to Col. Osthaus, recited that it was fully paid up and nonassessable; but the fact is that no part of it had been paid to the company. There was credited to Mr. Dow, on the books of the company, for lands and implements turned over to it by him, sufficient in value to cover this stock; but there is no evidence that any such application was ever made of it. Mr. Dow had paid-up stock in the company, and it was his intention to have this issued to Col. Osthaus and Mr. Collins; but the stock which was issued to them was a part of the increase stock, which, except as to the preferred, was never paid for. The transaction by which the stock was transferred to and acquired by Col. Osthaus, as trustee, and Mr. Collins, as executor, took place wholly between them and Mr. Dow, and in no respect with the company, save only as they subscribed and paid the company for the preferred stock, and got certificates from the company for it, and for the common. It was also assumed by them, in taking the common stock, that it was the stock of Mr. Dow, and not that of the company, and it was receipted for by Col. Osthaus as coming from him.

Mrs. Florence G. Collins, co-trustee with Col. Osthaus, was not named in the certificate for either the preferred or the common stock, and there is no evidence that she knew of or participated in their acquisition.

The attempted financial reorganization of the Logan Live Stock Company was a failure. The new capital put into it was not sufficient

to effect anything. The company did business for a while, but became hopelessly insolvent before many months, and in the spring of 1903 all its assets were seized and disposed of by creditors, on mortgages and attachments. Following this, suit was brought against the company by O. P. Laxton, one of the present plaintiffs, a former employé, in the circuit court of Reynolds county, Mo., and on May 28, 1903, a judgment was recovered therein for $557.67, on which execution was issued and $9.80 realized and applied, leaving $547.87 due and unsatisfied, and this was subsequently assigned for collection, before the present suit was brought, to the other plaintiff, William Bagnell. Mr. Bagnell himself also brought suit against the company in the circuit court of Wayne county, Mo., and on February 10, 1904, recovered judgment for $5,558.01, with $10.20 costs, on which execution was duly issued and returned nulla bona. On these two judgments $2,700 has been collected by Mr. Bagnell, leaving a balance of $3,413.08, which is still due and owing thereon by the company, which is dissolved and gone out of business.

Accepting these as the facts, it is difficult to see how the plaintiffs are entitled to recover; and that not on one ground, but on several. And not only on the merits, but the mode of procedure. There is no intention of denying that under the Missouri law the holder of stock in an insolvent corporation is liable to creditors to the extent of what is unpaid on it. Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 593. And this may be enforced by action at law against a single stockholder without joining the others. Perry v. Turner, 55 Mo. 418. It is also immaterial whether the defendant in fact subscribed for the stock; the acceptance of a certificate being sufficient. Shickle v. Watts, 94 Mo. 410, 7 S. W. 274. And suit may be maintained even though there are other creditors than the one suing. Norris v. Johnson, 34 Md. 485. Conceding all this, there are other considerations that are controlling.

It is to be observed, at the outstart, that, although there are two plaintiffs, there is no joint cause of action, as there must be to enable them to sue jointly. Each, by virtue of the judgment which he obtained against the company, had a right to proceed for satisfaction against holders of unpaid stock; but the right in each was personal, and could not be combined with that of others, simply because the liability to be enforced by each was against the same party. It is not as though suit was brought by Mr. Bagnell alone, as holder of both judgments, in which case it might be said, with some plausibility, that it was based, not on the judgments, but on his right as creditor to have satisfaction of them out of the unpaid subscription, as to which the judgments would be a mere matter of inducement. Nor is the case to be so taken because it is brought to his use, which does not overcome the objection that there are two independent plaintiffs. The action, as it stands, is in the name of Mr. Laxton, as well as Mr. Bagnell, one having one cause and the other another, that of Mr. Laxton, moreover, being less than the jurisdictional amount, and so not able to be tacked on to the other, the assignment to Mr. Bagnell being for collection only. Woodside v. Beckham, 216 U. S. 117,

30 Sup. Ct. 367, 54 L. Ed. 408. Neither is it the same as though this was a bill, prosecuted in the interest of all creditors, which proceeds very differently. This defect, if not remedied, is fatal; but it is no doubt amendable, and may therefore be passed by for others, which are not so easily disposed of. At the same time, as the case stands, it helps to justify the judgment.

But, if there are too many plaintiffs, just the opposite is true, as the action was originally brought, with regard to the number of defendants. The purpose of the action is to charge the trust estate, and, if the appointment of Col. Osthaus was valid, so was that of Mrs. Florence G. Collins, and both therefore should have been made parties. The trust was not committed to the one, but to both, and both conjointly were alone competent to represent it. It is said that Col. Osthaus was the only one who had anything to do with taking the stock. But that only serves to show the infirmity of that transaction. If the estate is to be affected here, it must be through both or none, and neither of the trustees could therefore be omitted. It may be that advantage should have been taken of this by plea in abatement; or, if that is not so, that the defect is curable, and has been overcome by the substitution, after Col. Osthaus' death, of the trustee appointed by the orphans' court, and the substitution subsequently of his successor, the present defendant. If parties competent to represent the estate were not brought in, in the beginning it is difficult to see how this could be remedied, and made to relate back, by the substitution now of others, who, by reason of a different appointment, are in no privity with them. Nor does this give effect to the trusteeship in Mrs. Collins, which is still outstanding. But, as observed above, with regard to the number of the plaintiffs, there are other objections which go deeper. And this feature therefore will also be passed over.

Disregarding mere form then, and disposing of the case squarely on the merits, it is nevertheless clear that the plaintiffs are not entitled to recover. In the first place, the appointment by the register of wills of trustees for these children was a nullity, and conferred no authority whatever upon either of them. Hart's Est., 12 Pa. Dist. R. 47. It seems to have been undertaken on the idea that the will having been proved, and the trustees being testamentary, the register could deal with it. But there is nothing to sustain this. The jurisdiction was in the orphans' court or the common pleas, and this was exclusive. Act June 14, 1836 (P. L. 632) § 15; Act April 22, 1846 (P. L. 483) § 1; Seibert's Appl., 19 Pa. 49. In accordance with this, the present defendant was appointed by the orphans' court, as well as his predecessor. But this was not retroactive. When Col. Osthaus therefore assumed to act for the estate, he was nothing more nor less than an intermeddler. The children, being minors, had nothing to say, and the present defendant is not precluded from raising the question now, as their representative. It is said that, having taken the estate into his actual control, and administered upon it, he was at least a de facto trustee, and that any one was protected in dealing with him; the estate, having got the benefit of what he did, being bound to bear the burden. But this fails to recognize the

fact, if there was· nothing more, that the beneficiaries are minors, as to ·whom everything must be according to strict law, and no implication indulged in. Col. Osthaus, therefore, under the circumstances, had no authority to do anything which is now relied on to bind the ·estate, and his taking of the stock, which is at the bottom of it all, must be held to be of no validity.

Assuming, however, that this is not so, and that the appointment by the register, having been followed by an actual administration of the estate, is to be respected, there were two trustees appointed, as already pointed out, Mrs. Florence G. Collins, as well as Col. Osthaus, and in any matter of contract both must join to make it effective.

"The general doctrine does not appear to admit of dispute that, where the administration of a trust is vested in several trustees, they all form but one collective trustee, and must exercise the powers of the office in their joint capacity. Their interest and authority being equal and undivided, they cannot act separately, but must all join. Thus one trustee alone has no power to convey, lease, or bind the trust property, or to perform any act resting in the sound discretion of the trustees as a body." 28 Am. & Eng. Encycl. Law (2d Ed.) 586. .

That is the exact situation here. And the act of Col. Osthaus by himself, in taking the stock of the Logan Live Stock Company as he did, was not binding. It is not as though there was need for immediate action, to save the estate from loss, which forms a possible exception. It was simply the case of one of two trustees undertaking to make an· important contract without any authority from the other, which was beyond his power. Vandever's Est., 8 Watts & S. (Pa.) 405, 42 Am. Dec. 305.

It might possibly be different if Mrs. Collins, although not participating at the time, was subsequently consulted and acquiesced in it. It is stated, in a letter of Mr. Collins, that she did. But that is not evidence. Nor was it necessary to call Mrs. Collins to deny it. It was for the plaintiffs to show, by competent proof, that she ratified what was done by Col. Osthaus, if they intended to rely on it, and it is to be assumed that this was not the fact, so long as they did not.

· But, even if this obstacle was overcome, there is still another in the way of· a recovery. It has long been the policy of ·the law, not only in this state, but in many others, not to permit the investment of trust funds in a private corporation. And this, in Pennsylvania, has been embodied· in the Constitution, where it is provided:

"No Act of the General Assembly shall authorize the investment of trust funds by executors, administrators, guardians, or other trustees, in bonds .or stocks of any private corporation, and· such acts now existing are avoided, saving investments heretofore made." Const. Pa. art. 3, § 22.

This is not simply a restraint upon legislation; it is a positive inhibition against any such transaction. With this provision in the fundamental law, the present trustees were prohibited from putting any of the estate in their charge into the stock of an industrial corporation, such as the Logan Live Stock Company, or making any arrangements that would have the effect of doing so. The payment by Col. Osthaus for $600 of preferred stock was thus absolutely unauthor-

ized, and he, and not the estate, is responsible for the consequences. Commonwealth v. McConnell, 226 Pa. 244, 75 Atl. 367. Nor did the acceptance of $2,100 of common stock in that connection impose any liability on the estate, whether it is treated as a payment by Mr. Dow on his individual indebtedness or otherwise. The liability for unpaid stock is admittedly contractual, and grows out of the obligation of each holder to see that what he has is paid for where it is necessary to meet the demands of creditors. And it is manifest that, if a trustee cannot bind the estate by direct subscription, he can do nothing indirectly to make it liable. To hold otherwise would permit of an evasion of the law that cannot be countenanced. And this is emphasized in the present instance by the provision of the Missouri statute that no person holding stock in a corporation as executor, administrator, guardian, or trustee shall be personally liable; the liability being thrown over onto the estate which is so represented. Rev. St. Mo. 1889, § 2776v. Creditors of a corporation, according to this, having a right to rely on the stock being paid for, are entitled to look to those who appear by the books to be stockholders, if it turn out that it is not, and this, in case of a trustee, is the estate, which thus becomes liable. But the effect of this, if enforced, would be to nullify the constitutional provision which has been referred to. And unfortunately for the plaintiffs, in the present instance, it is the Pennsylvania law, under which this estate was being administered, that determines the authority of the trustee, and not the law of Missouri, where the corporation was domiciled, which cannot interfere with this. The implied undertaking, on which the plaintiffs rely, arises out of the prohibited act of an unauthorized trustee, and it is not possible to bridge over the gap and reach the estate, which the trustee, by the law of his appointment, had no power to bind; it being the purpose of the law to protect against such improvidence. The creditors of the corporation have a responsible subscriber in the person of the trustee, if he assumed to act without authority, and do not need to search around for some one to hold, outside of that. The Missouri statute, in relieving the trustee and holding the estate, assumes that he acts with authority, and, where this is not the case, he is liable under the implied warranty that he does so. At all events, the estate of these minors cannot be looked to; the trustee, so far as they were concerned, being incompetent to bind them.

It is said, however, that the stock here was taken in payment of a debt, and not as an investment, and that, the debt being otherwise uncollectible, the estate is at a serious disadvantage unless the trustee had authority to make the arrangement. But, assuming that the trustee had a qualified right to accept the stock for the purpose of preventing a loss, an undertaking to pay what was due on it is not to be implied against the estate in view of the protection extended by the law over it. To involve an estate in loss, to avoid a loss, would be an absurd proposition. In First National Bank v. Converse, 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537, a national bank, to protect itself from loss on a pre-existing indebtedness, took stock in a corporation organized for the purpose of engaging in a speculative

business; and it was held that, having no authority to subscribe for such stock, it could set this up in defense of an action against it to enforce a double stock liability. And in Merchants' National Bank v. Wehrmann, 202 U. S. 295, 26 Sup. Ct. 613, 50 L. Ed. 1036, it was similarly held that, while a national bank, as security for a debt, may take property which it is not authorized to invest in, and foreclose on it, it cannot be held liable on such stock as an absolute owner, being prohibited from such ownership by the national bank act. That principle is applicable here. By the policy of the law, as expressed in the constitutional provision referred to, trust estates are prohibited from being put at the risk of commercial ventures, or being drawn by investment into them. And even though, in order to save a debt, stock in a private corporation of this character be taken, the estate does not thereby become vested with such ownership as makes it liable for what may be due thereon; the policy of the law in favor of the estate standing in the way of the implication.

Judgment is therefore directed to be entered in favor of the defendant.