## SAMUELS v. E. F. DREW & CO., Inc.

### Ex parte CONWAY.

(District Court, S. D. New York. May 20, 1924.)

1. **Receivers ⟜51—Receivers, as officers of court, have no power to act as authorized until they fulfill condition imposed on them by order appointing them.**

Receivers, as officers of court, have no power to act as authorized until they fulfill condition imposed on them by order appointing them, as for instance the condition requiring them to file bond.

2. **Receivers ⟜90—Powers given by decree to receivers held sufficient to authorize their acceptance of contract of employment cum onere, if they chose to do so.**

Powers given by decree to receivers to demand, sue for, collect, receive, and take into their possession all choses in action and property of every description, *held* sufficient to authorize their acceptance of claimant's contract of employment with the company, cum onere, if they chose to do so.

3. **Receivers ⟜107—When two receivers are appointed, all decisions which commit estate to obligation must have concurrence of both to be valid.**

When two receivers are appointed, all decisions which commit estate to obligation must have concurrence of both to be valid, if not in each several case, at least by agreement covering matters of the general kind of which the specific obligation is an instance.

4. **Accord and satisfaction ⟜11(1) — Compromise and settlement ⟜5(2)—Employee's acceptance from receiver of monthly checks, given in full payment for services rendered, held to constitute accord and satisfaction.**

Where employee of estate worked on a quantum meruit basis his acceptance from receiver of monthly checks, given in full payment of services rendered, but representing less than employee's demand, and his cashing of such checks, though under protest, constituted an accord and satisfaction.

5. **Accord and satisfaction ⟜10(1) — Compromise and settlement ⟜5(2)—Accord may be made of unliquidated claim by payment of less than demand.**

An accord may be made of an unliquidated claim by payment of less than the demand.

6. **Receivers ⟜96—Employee of company in hands of receiver, working without contract, is entitled to reasonable value of his services.**

Employee of company in receivership, working without contract, is entitled to reasonable value of his services.

7. **Accord and satisfaction ⟜26(3) — Compromise and settlement ⟜23(3)—Evidence held to show receiver informed employee of estate that monthly payments to employee constituted full payment.**

Evidence *held* to show that a receiver informed employee of the estate, working without contract of employment, that the monthly check payments that were made to employee constituted full compensation for services rendered.

In Equity. In the matter of the claim of John F. Conway against the receiver or receivers of E. F. Drew & Co., Inc., against which company Sumner L. Samuels instituted an action. The claim was referred to a special master, who submitted his report, and both claimant and receivers except thereto. Claimant's exceptions overruled, and receivers' exceptions sustained in part, with directions.

Order affirmed 7 F.(2d) 766. See, also, 286 F. 278, 281.

John G. Poore, of New York City, for claimant.

Maxwell Brandwene, of New York City, for receiver.

LEARNED HAND, District Judge. The master's report being exceptionally full, I need not repeat the facts. The questions substantially are these: (1) Did the receivers adopt the contract? (2) If not, did Conway prove a quantum meruit, and, if so, for how much?

[1] The master has found that Farleigh, one of the two receivers, on Saturday, October 30th, or Sunday, October 31st, told Conway, in substance, that he should continue under the contract, and that this was fairly to be construed as an adoption of it by the receivers. I shall accept his finding because the testimony was directly in conflict. The question is then one of law. Several points arise. First, the order of October 30th provided that the receivers, "before entering upon the discharge of their duties, will file with the clerk of the court a proper bond." This they did not do till Monday, November 1st. Now, while it is true that the possession of the receivers, in the sense that the assets are in the custody of the court, dates from the granting of the order, still the receivers, as officers of the court, authorized to take any action as such, have no power to act till they fulfill the condition imposed on them by the order. In re Christian Jensen Co., 128 N. Y. 550, 553, 28 N. E. 665; Hegewisch v. Silver, 140 N. Y. 419, 35 N. E. 658. Perhaps the point is not vital, because such action no doubt might be ratified by subsequent acquiescence, and Farleigh did not repudiate his talk after he had qualified.

[2, 3] As the decree gives authority to the receivers "to demand, sue for, collect, receive,

and take into their possession all * * * choses in action * * * and property of every description," I think that their powers were broad enough to authorize thier acceptance of this chose in action cum onere, if they chose to do so. Thus the question is this: May a single receiver commit the estate by his several acceptance of such an asset? Curiously enough, the books seem to contain nothing upon it, because as respects Shirk v. Brookfield, 77 App. Div. 295, 79 N. Y. S. 225, I need only say that both receivers had appointed the manager who made the contract, if the case was one in special assumpsit, and both had signed the letter if it was on a quantum meruit. For the rest, the case only decides that the admissions of either one is competent against the estate.

Being therefore called upon to consider the matter as res integra I have not the least hesitation in saying that both receivers must act. I do not mean that they may not by common consent distribute their affairs between them, delegating incidental decisions to either one severally. That question is not presented here, and I pass it till it arises. I do mean to say that when both are appointed all decisions which commit the estate to any obligation must have the concurrence of both to be valid, if not in each several case, at least by agreement covering matters of the general kind of which specific obligation is an instance.

It is indeed the purpose of having two receivers that decisions shall not be taken on the responsibility of only one, and indeed it is in practice an inconvenience so great as to make me generally loath to divide responsibility for the sake of greater security. Were it not so, instead of getting the security which joint action affords, the estate would be open to the hazard of double error and of discordant management. In the analogous situation of joint trustees, this is the rule (Insurance Co. v. Chase, 5 Wall. 509, 18 L. Ed. 524; Bagnell v. Ives [C. C.] 184 F. 466, 472), and the same is true of executors (Union Bank v. Sullivan, 214 N. Y. 332, 343, 108 N. E. 558). It is clear beyond question that Lowenthal never adopted the contract, and Conway's continuance in his position until Lowenthal's letter of December 16th was on the chance that he might or might not see fit to join in Farleigh's decision made at the very outset. Hence I overrule Conway's exceptions.

[4, 5] The master has found on the quantum meruit that the question always lay open between Lowenthal, who was sole receiver after December 12, 1920, and Conway, whether the monthly payments were to be full compensation for his services. He recognizes, and indeed it is unquestioned law, that, if Lowenthal had once unequivocally advised Conway that the monthly checks were to be taken as full payment, it would have been a good accord and satisfaction. U. S. Bobbin, etc., Co. v. Thissell, 137 F. 1, 69 C. C. A. 651; Id., 157 F. 1005, 85 C. C. A. 680 (C. C. A. 1); Swindell v. Youngstown, etc., Co., 230 F. 438, 144 C. C. A. 580 (C. C. A. 6). It would be only an instance of the common rule that an accord may be made of an unliquidated claim by payment of less than the demand. Chicago, M., etc., Ry. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099. If then at any time Lowenthal made it clear that he meant the checks to be in full payment, from that time forward Conway cashed them at his peril.

[6] I accept the master's finding for the months of November and December, because there is no evidence that anything definite was done before that time. Conway, working as he was without any contract, was entitled to the reasonable value of his services, and the rate found, $15,000, seems to me reasonable under the proof. I do not agree with the receiver that the proof by the experts was insufficient to form the basis of an award of this character. It was as good proof as was obtainable under the circumstances, and, what is striking, it was not met, though the receiver got an adjournment to meet it.

[7] I cannot agree, however, with the learned master's finding that during the month of January, 1921, there was not a clear understanding between the parties that the old drawing account was paid as full compensation. So far as any later negotiations went, they were no more than that Conway was to look for anything more to the new and reorganized company, which every one correctly assumed was to be formed. Lowenthal's testimony is very flat on the question, and it is erroneous to treat his answers, when recalled at the close of the testimony, as in any sense qualifying the meaning of what he had originally said. He did say at that time that he had not in his talks with Conway used the phrase, "full satisfaction" or "any expression of that kind," but he remained positive that he had told him that he regarded the drawing account "as payment in full." This is just what he said when he was first sworn.

Conway flatly contradicted this testimony, and, if the matter had rested there, I should of course affirm the master's finding, but it did not. Conway was sedulously cross-examined on the point, and given every opportunity to qualify or correct his denials. Then it was shown that on February 3, 1921, he had writen to Lowenthal a letter which to my mind puts it out of any fair question that Lowenthal's recollection is the true one and that Conway is mistaken. That letter was in answer to one from Lowenthal on the preceding day, in which he wrote that he had already explained to Conway that it would be unfair to give him more than the executives got. Conway answered that it was unfair to expect him "to accept as full compensation the amount" of his earlier drawing account, $500 a month. Standing alone, this might not have been enough to prove that Lowenthal had in the past unconditionally taken that position, but the conclusion of the letter puts the fact beyond doubt. It reads as follows: "The only proposition which I have received from you is to pay me in full compensation a drawing account which, as just stated, I cannot see my way to accept. If you have any further proposition, I would be very happy to listen to it."

It does not seem to me open to any debate in the face of this letter that, just as he says, Lowenthal told Conway some time in January (he says it was early in the month) that the payments were to be in full compensation. I agree that Conway never assented to these terms and was constantly pressing for some modification of them. It may also be true that Lowenthal was willing and anxious to secure for him some added pay out of the new company, and that in the spring of 1922, and after Conway's services had ended, he was even willing to pay him $4,000 by way of disposing of his claims. Still, after reading all the testimony, I find nothing to show that there was any change in Lowenthal's position before December 24, 1921. On that day the services were concluded, and the rights of the parties became fixed. In corroboration of this conclusion I may say that I can see no reason why Lowenthal should have wished to change this decision or to pay Conway, the manager of the yarn department, more than Drew, the president, or any other executive. When, therefore, he received his January check and all other checks, Conway had his option, being on his own written admission advised that it was to be in full compensa-

tion, either to turn it back and press for larger pay, or to take it and be satisfied.

I sustain the exceptions to the master's report as being against the weight of evidence. The petitioner may take an order for $1,500, the extra compensation for November and December at the rate of $1,250 a month. The disbursements will be divided in the proportion of three-quarters against Conway and one-quarter against the estate.