## PUBLISHERS, GEORGE KNAPP & COMPANY, Appellant, v. THE PEPSIN SYRUP COMPANY, Respondent.

**St. Louis Court of Appeals. Submitted March 31, 1909. Opinion filed May 11, 1909.**

PAYMENT: Acceptance of Check "In Full." Where a check was tendered by a debtor stating that it was in full settlement of his account, and it was cashed and the proceeds retained by the creditor, the latter could not recover a balance still due on the account, although he notified the debtor at the time that he would not accept it as full payment.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*E. N. Robinson* for appellant.

The liability of the defendant is fixed in this case by contract. The terms of the contract are plain, unambiguous, and not open to dispute. The law is well settled that payment of part of a debt is not a payment of the whole. Defendant is clearly liable for the advertising actually done at the card rate of the plaintiff, and receipt of the check marked "Payment in full" will not prevent a recovery for the balance due. Riley v. Kershaw, 52 Mo. 224; Banking Co. v. Baker, 99 Mo. App. 660; Winter v. Railroad, 160 Mo. 178; 73 Mo. App. 173; Wetmore v. Crouch, 150 Mo. 672; McCormick v. St. Louis, 166 Mo. 345; Pohlman v. St. Louis, 145 Mo. 656; Dry Goods Co. v. Goss, 65 Mo. App. 61.

*Fordyce, Holliday & White* for respondent.

Although there was a contract purporting to fix the rate at which advertising was to be paid for under certain contingencies, the amount due at the time of the tender was in dispute, thus making the demand unliquidated and constituted the tendered check and its receipt an accord and satisfaction. School Board v. Hull, 72 Mo. App. 403; Hargroves v. Cooke, 15 Ga. 332; Treat v. Price, 47 Neb. 883; Nesbit v. Lawson, 1 Ga. 275; Honeyman v. Jarvis, 79 Ill. 318; Bond v. Coats, 16 Ind. 402; Zoebisch v. Von Minden, 120 N. Y. 406; 1 Cyc. 334; Bank of Amsterdam v. Blair, 44 Barb. 652. The acceptance and retention of a check, which purports to have been given in full of account, cancels the indebtedness. The acceptance of the money is an acceptance of the condition under which it is tendered. Cornelius v. Rosen, 111 Mo. App. 619; Andrews v. Mfg. Co., 100 Mo. App. 599; School Board v. Hull, 72 Mo. App. 403; Adams v. Helm, 55 Mo. 471; Perkins v. Headley, 49 Mo. App. 556.

REYNOLDS, P. J.—This action was commenced before a justice of the peace by plaintiff to recover a balance of $471.46, claimed to be due under a contract for advertising. It was commenced by attachment, and from a judgment in favor of plaintiff before the justice, defendant appealed to the circuit court, where on a trial before the court, a jury having been waived, judgment was rendered in favor of defendant. Plaintiff, after interposing a motion for a new trial and saving exceptions to the order of the court overruling it, has brought the case here on appeal.

Defendant filed no written pleadings and it is a little difficult to understand whether the case was tried on the theory of accord and satisfaction or of a change of contract between the parties and settlement made at an agreed rate. Possibly the theory of the defendant

is best shown by this, which occurred during the examination of the defendant's manager as a witness on behalf of defendant. His counsel asked him whether there was any definite agreement between him and *The Republic* as to the rate made to pay for advertising run in October, November and December, 1905. Counsel for plaintiff objected to this on the ground that most of the month of October was specifically fixed by card rate of *The Republic*. In answer to this counsel for defendant stated that the testimony of defendant's manager is that the contract was terminated in March by *The Republic* shutting down on his credit and that a full settlement had been made at that time. Whereupon the court announced: "I will hear the testimony on that theory. He may answer the question." It would appear, therefore, that the case was tried on the theory that there had been a settlement of the account in July, 1905, which settled everything down to March 19, 1905, and that the question was as to what rates should be charged for advertising done between October 10th and December 31st of that year.

There was the usual conflict in the testimony, apt to arise in cases of this kind. It appeared, however, that a contract had been entered into between plaintiff and defendant, by which defendant was granted specific rates on advertising to be done by it, provided the amount of advertising was so many thousand lines. It was distinctly set out in the contract, however, that if that number of lines of advertising matter was not used, then the rate was to be somewhat higher. The claim on the part of the plaintiff was to the effect that that number of lines not having been used it was entitled to charge full rates. If that was so, then plaintiff was entitled to the amount sued for, $471.46; while if defendant's claim was correct, that the original contract had been abandoned in the spring of 1905, and that defendant had then settled up in full for what was due under it, and that the advertising after that date

was at a special rate, then defendant only owed $534.60 for that and this amount it had paid. The court pos-sibly took this view of the case, although we cannot say that with any definiteness, because no declarations of law were given and none asked by either party.

The statement filed with the justice was founded on an itemized bill for card advertisement in the plaintiff's paper, showing so many lines of advertising matter claimed to have been published at different times between November 13, 1904, down to December 31, 1905, charged for at a certain rate, amounting to $1,663.15. Then follow two items dated January 18, 1906, one for $184.42, the other $287.04, a total of $471.46, purporting to be for difference in rate of advertising at the rates set out in the body of the account and at rates which plaintiff claimed it was entitled to charge under the contract between the parties. It is for this $471.46 that the suit was brought.

An examination of the statement filed, as well as the evidence, shows that the advertising amounted to $1,128.55, down to March 19, 1905, and it appears to have stopped with the advertisement of that date, and on June 30, 1905, or July 2, 1905, defendant appears to have paid that amount. Defendant's testimony tended to show that plaintiff stopped its advertising then, because, defendant being in arrears on its payments, plaintiff refused further credit. This is practically not controverted by any of plaintiff's testimony. The advertising appears to have been resumed on the tenth of October, 1905, and continued, according to the account and the evidence, to the thirty-first of December of that year. The price for this, according to defendant, and according to the rates set out in the contract, if the requisite amount of advertising had been done, was to be $534.60. According to plaintiff it was to be $471.46 more, for this and the advertising previously done, if plaintiff was entitled to go back over all the advertising done between November 1, 1904, and December 31, 1905,

and charge up at its card rates when less than the contract number of lines had been carried. A good deal of correspondence took place between the parties over this matter, apparently with no very definite result, the plaintiff, however, always insisting that it was entitled to the full rates charged in its account, as indeed we think it had every right to do, and it should have recovered that in this case but for an act that has turned out rather disastrously for it.

On the twenty-third of May, 1906, the matter being in dispute between them, defendant wrote plaintiff a letter in which defendant stated that it enclosed check for $534.60, "which you will note we have written 'in full of account.' This covers the advertising in October, November and December, according to the original bills which we received from you." The letter then goes on to state the controversy between the parties and the points of difference between them and ends in this way: "We do not feel that we are legally or morally obliged to pay an additional rate for any of this advertising, and trust that you will see the matter in the same light and credit us in full."

The check is as follows:

"Monticello, Illinois, May 23rd, 1906.
"Pay to the order of Publishers George Knapp & Co. Five Hundred thirty-four and 60-100 dollars $534.60, in full of account to date.

"PEPSIN SYRUP CO.
"By ALLEN F. MOORE, Treas.
"To H. V. Moore Banking & Trust Co., Monticello, Illinois."

This check was endorsed by plaintiff and put through the bank and paid to plaintiff in due course. It seems that this check came to the cashier of plaintiff, who put it through the bank and sent the letter enclosing it to the advertising manager, who had had charge

of the matter between plaintiff and defendant. It came to the latter's notice on May 25th, possibly the day or the day after its receipt, whereupon on May 25th he wired the manager of defendant at Monticello, as follows: "Marking 'in full of account' on your check overlooked. This does not pay account in full. Letter tonight's mail." The letter referred to is as follows:

"St. Louis, May 25, 1906.
"Mr. Allen F. Moore, Mgr.,
   "Pepsin Syrup Co.,
      "Monticello, Ill.

"My dear Sirs: Referring to your letter of May 22nd, enclosing check for $534.60, will state that this letter came to the advertising department of the Republic after the check was sent to the bank for collection by the cashier, and we are compelled to notify you formally that check for $534.60 does not pay your account with The Republic in full. We have just wired you to this effect, and we are compelled to ask that you pay the correct rate for the advertising which you have done in The Republic, as per bill which has been rendered,

"Yours very truly,
"A. K. HAMMOND.
"Advertising Manager The Republic."

It was in evidence that as soon as the advertising manager of the plaintiff saw the letter of defendant enclosing the check, he also made an effort to stop payment of the check, but was advised that it was too late, that it had already been paid. There is no pretense that the plaintiff offered to return the check or money. While this transaction lacks several elements necessary to constitute a case of accord and satisfaction, we think that under the facts in evidence plaintiff must be held to have accepted the check in full.

The remarks of Judge ELLISON, in the case of Cornelius v. Rosen, 111 Mo. App. 619, at 621, cover this

case: "The evidence tended to show that defendant tendered this check as in full of all plaintiff's claim; and that plaintiff refused to so accept it, but nevertheless retained the check, cashed it and kept the money. If such were the facts plaintiff must be held to have accepted it in full, for if he accepts money conditionally tendered, he accepts the condition also. [St. Joseph School Board v. Hull, 72 Mo. App. 403; Andrews v. Manufacturing Co., 100 Mo. App. 599.]"

In the case at bar the trial judge must have found that a check having been tendered in full settlement of a disputed transaction and retained by plaintiff, plaintiff could not recover. We do not determine this case on the theory of accord and satisfaction, a theory advanced by defendant's counsel, nor is it necessary to do so. The case lacks many of the elements necessary to constitute accord and satisfaction. We determine it solely on the finding which the action of the trial court warrants us to assume, namely, tender of payment of a disputed account as in full, and such acts of plaintiff as estopped it from claiming the contrary. We are further controlled by the presumption that always follows the finding and judgment of the trial court. The judgment of the circuit court must be, and is affirmed. All concur.