SWINDELL et al. v. YOUNGSTOWN SHEET & TUBE CO.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1916.)

No. 2676.

1. COURTS ⊜⊃290—UNITED STATES COURTS—JURISDICTION—NATURE OF ACTION AND AMOUNT INVOLVED.

Judicial Code (Act March 3, 1911, c. 231) § 24, par. 1, 36 Stat. 1091 (Comp. St. 1913, § 991), provides, relative to the jurisdiction of District Courts, that the provision therein as to the sum or value of the matter in controversy shall not apply to the cases mentioned in succeeding paragraphs. Section 256, par. 5 (Comp. St. 1913, § 1233), provides that the jurisdiction of United States courts of all cases arising under the patent or copyright laws shall be exclusive of the courts of the several states. A bill and answer were in the ordinary forms employed in patent suits, except that the ultimate issue was whether plaintiffs were entitled to damages in the form of fixed royalties, instead of an indefinite sum in the form of profits, and an injunction was prayed restraining defendant from further using infringing furnaces until it should pay plaintiffs such fixed sum. *Held*, that the District Court had jurisdiction, though the sum involved was less than $3,000, as the bill showed that plaintiffs invoked the aid of the patent laws, and the suit might be said to have arisen under those laws.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 832; Dec. Dig. ⊜⊃290.]

2. ACCORD AND SATISFACTION ⊜⊃11(2)—COMPROMISE AND SETTLEMENT ⊜⊃ 5(2)—PART PAYMENT CONDITIONED ON ACCEPTANCE IN FULL—"LIQUIDATED."

Patentees of an improvement in annealing furnaces constructed and installed furnaces for defendant, for which defendant paid a license fee of $250 each. Thereafter defendant built four additional furnaces, and the patentees presented a bill for royalties thereon at $250 each. Defendant declined to pay until convinced by decree that it was infringing the patentees' rights. In a suit against a third party the patent was subsequently held valid and infringed, and defendant thereafter mailed the patentees a check for the amount of the bill previously presented, with interest, and a receipt for such amount "in full payment," with a request that it be receipted and returned. The patentees retained and cashed the check, but, instead of signing the receipt, sent defendant a new account for royalty at $500 for each furnace, crediting thereon the amount of the check. They claimed that they had seasonably notified defendant's counsel that they had established this fixed royalty fee, but defendant denied that its counsel received this information as its representative, and denied knowledge that the first bill had been canceled or withdrawn until receipt of the new account. *Held*, that there was an accord and satisfaction, as an amount is not "liquidated," within the rule as to accord and satisfaction, unless the amount claimed has been ascertained and agreed on or fixed by operation of law.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 76, 77; Dec. Dig. ⊜⊃11(2); Compromise and Settlement, Cent. Dig. §§ 12, 13; Dec. Dig. ⊜⊃5(2).

For other definitions, see Words and Phrases, First and Second Series, Liquidated.]

---

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PATENTS ⊕1—RIGHTS OF PATENTEE—SOURCE.

The patent law is not the source of a patentee's right to fix the price of his patented article, nor of the right to make, use, and vend such article, these being natural or inherent rights of the patentee; but the patent law is the source of his right to exclude others from making, using, and vending such article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 1; Dec. Dig. ⊕1.]

4. PATENTS ⊕1—RIGHTS OF PATENTEE—NATURE.

A patentee's exclusive right to make, use, and vend the patented article is a franchise, possessing the qualities and characteristics of property during the life of the patent, and may be dealt with like any other property.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 1; Dec. Dig. ⊕1.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Wm. L. Day, Judge.

Suit by Edward H. Swindell and others against the Youngstown Sheet & Tube Company. From a decree dismissing the bill, complainants appeal. Affirmed.

Stearns, Chamberlain & Royon, of Cleveland, Ohio, for appellants.

Hine, Kennedy & Manchester, of Youngstown, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This is an appeal from a decree dismissing the bill of complaint. It was agreed by the parties to the suit that the question presented by the appeal could be determined without examination of the pleadings and evidence, and, with the approval of the District Court and in pursuance of new equity rule 77, the parties signed a statement of the case with a view of showing how the question arose and was decided below, setting forth such of the agreed facts as were deemed essential to a decision of the question here, and so the pleadings were not included. Prior to the submission in the court below it was stipulated that the case should be presented there "for final hearing upon an application for injunction upon no other issue except one of accord and satisfaction."

Appellants were seeking to recover $797.18 as a balance of royalties claimed to be due in consequence of alleged construction and use by defendant of four annealing furnaces in accordance with certain letters patent belonging to appellants. From the facts so presented, however, it is uncertain whether the suit was grounded upon the letters patent and alleged infringement, or simply upon the claim for the sum of money stated. Upon the hearing here this uncertainty gave rise to a question of jurisdiction, which resulted in bringing up the pleadings.

[1] The bill and answer are of the ordinary forms employed in patent suits, except that the ultimate issue was whether plaintiffs were entitled or not under the patent to recover damages in the form of fixed royalties, instead of an indefinite sum in the form of profits; and an injunction was prayed restraining defendant from further us-

ing the furnaces in question "until the said defendant shall pay to your orators the said sum of seven hundred ninety-seven dollars eighteen cents ($797.18), additional to the costs herein."

The plaintiffs were entitled to the selection of the laws upon which they would rely to maintain their suit, and we think the bill shows they invoked the aid and protection of the patent laws; indeed, the suit may be said to have arisen under those laws, notwithstanding the fact that definite royalties, instead of profits were made the ultimate object of the recovery. Healy v. Sea Gull Specialty Co., 237 U. S. 479, 480, 35 Sup. Ct. 658, 59 L. Ed. 1056; Geneva Furniture Co. v. Karpen, 238 U. S. 254, 258, 35 Sup. Ct. 788, 59 L. Ed. 1295; The Fair v. Kohler Dye Co., 228 U. S. 22, 25, 33 Sup. Ct. 410, 57 L. Ed. 716; White v. Rankin, 144 U. S. 628, 635, 12 Sup. Ct. 768, 36 L. Ed. 569; Picture Talking Machine Co. v. The Fair, 123 Fed. 424, 425, 61 C. C. A. 58 (C. C. A. 7th Cir.); Dunham v. Bent (C. C.) 72 Fed. 60, 61; Seibert Cylinder Oil Cup Co. v. Manning (C. C.) 32 Fed. 625, 626. It is scarcely necessary to say that such a suit may be maintained for a sum less than $3,000, in view alike of the proviso to the first paragraph of section 24 of the Judicial Code (see also 36 Stat. 1,086, 1091, and Judicial Code, § 256, par. 5), and of the rule of decision settled prior to the enactment of the proviso. Miller-Magee Co. v. Carpenter (C. C.) 34 Fed. 433, 434, opinion by Circuit Judge, later Mr. Justice, Jackson, approved in Re Hohorst, 150 U. S. 653, 662, 14 Sup. Ct. 221, 37 L. Ed. 1211; Ames v. Hager (C. C.) 36 Fed. 129, 130; Westinghouse Air Brake Co. v. Great Northern Ry. Co., 88 Fed. 258, 260, 31 C. C. A. 525 (C. C. A. 2d Cir.); Lewis Blind Stitch Co. v. Arbetter Felling Mach. Co. (C. C.) 181 Fed. 974, 977. It follows that the court below had jurisdiction.

[2] Upon the issue of accord and satisfaction the District Court, under the facts there presented, found in favor of the appellee. The patent in suit, No. 624,401, was issued to William Swindell, now deceased, and John C. Swindell, May 2, 1899, for an improvement in annealing furnaces. According to the agreed statement of facts the appellee, prior to 1909, constructed and installed "some of these furnaces," for which appellee paid to appellants a license fee to use the furnaces. This is made clear by certain admitted allegations of the bill and by part of the correspondence. It there appears that the patentees prior to 1910 constructed and installed at the works of appellee three furnaces for which appellee paid "certain fees"; and the correspondence shows that another furnace was constructed later for the appellee, but whether by the patentees is uncertain, though it appears that the royalty paid on that furnace (in February, 1906), and also on the earlier furnaces, was $250 each. In 1909 appellee built four additional furnaces, and the royalties claimed in respect of these are the subject of the present controversy. On February 28, 1910, the patentees presented to the appellee an account against it as follows:

"To royalty on four (4) Swindell patent annealing furnaces @ $250 each, $1,000.00."

This account was presented several times in 1910, once in duplicate, and twice later in the form of "bill rendered." A dispute at once

arose concerning both the validity of the patent and the claim of in-
fringement; the appellee caused tests to be made of the furnaces and
the results reported to the patentees; both sides were advised by coun-
sel, the counsel for the patentees concluding that there was, and coun-
sel for the appellee that there was not, infringement; and this was
apart from the question of validity. The dispute was continued
through correspondence until December 23, 1910, when the appellee
declined to pay the license fees, at least until it should be "convinced,
either by the decree of the court or otherwise, that we are infringing
on any part of their (patentees') rights, as a matter of principle."
After that date the patentees instituted an action in the United States
District Court for the Western District of Pennsylvania against George
Hagen for infringement of the letters patent, where, on August 27,
1912, the patent was held to be valid and infringed (198 Fed. 490),
and on April 4, 1913, the decree was affirmed (204 Fed. 442, 122 C.
C. A. 628 [C. C. A. 3d Cir.]). On the 15th of July following, the
appellee sent a letter to appellants, stating that it understood the pat-
ent had been upheld and that it was mailing to them a check "cover-
ing your invoice of February 28, 1910, plus interest at 6 per cent.
per annum." Inclosed with the letter were the check and a "voucher,"
the check containing these words and figures:

"For payment of your invoice of February 28, 1910.............$1,000 00
3 years, 4 months, 17 days interest at 6%...................... 202 82
                                                          ─────────
                                                          $1,202 82"

The accompanying voucher was as follows:

"Received of the Youngstown Sheet & Tube Company twelve hundred two
and eighty-two one-hundredths dollars, in full payment of above account.
*  *  *  Receipt and return this voucher in envelope provided."

The letter, with the check and voucher, was received by appellants,
who cashed the check and retained the money, but did not sign or re-
turn the voucher. Correspondence followed, and on the 6th of August
the patentees sent another account for royalty on the same furnaces,
but at $500 for each, in all $2,000, crediting thereon the amount of
appellee's check, $1,202.82, and so leaving the balance, $797.18, now
in issue. This was the first presentation of such an account, and it
resulted in further dispute between the parties. The reason assigned
by the appellants for so increasing the royalty was because of the "ex-
tensive litigation" which they had "gone through to establish this pat-
ent." They claimed in effect that they had seasonably notified coun-
sel for appellee that they "had established a fixed royalty fee of $500
per furnace." Appellee's version of this is that, if the counsel named
was so advised, he "simply accepted this information as information
and not in any way as our representative," insisting that the bill it
had paid, with interest, was never "canceled or withdrawn" to its
knowledge; and so it is not open to fair inference that appellee was
even notified of the increase in royalty until it received the new ac-
count. It is to be observed that this was after it had mailed its check
and voucher to appellants. But, whatever the facts may be as to

notice, it is certain that the parties never agreed upon the new royalty.

It is nevertheless claimed for appellants that the new "license fee" "was liquidated as soon as the complainants made the charge," and consequently that there was "no consideration for the waiver of the balance due." The new license fee, however, could not be liquidated by the act alone of appellants. The word "liquidated," in the sense of the rule relied on by counsel, signifies that the amount claimed has been ascertained and agreed on or fixed by operation of law. Chicago, Milwaukee, etc., Ry. v. Clark, 178 U. S. 353, 372, 20 Sup. Ct. 924, 44 L. Ed. 1099; Redmond v. Atlanta & Birmingham Railway, 129 Ga. 133, 138, 58 S. E. 874; Treat v. Price, 47 Neb. 875, 883, 66 N. W. 834. It is not suggested that the amount was agreed on; and it is not shown how the increased license fee can be said to have been "fixed by operation of law," unless it is meant to ascribe such an attribute as this to the act alone of a patentee in fixing or changing a license fee; but this might as well be said of his act in fixing or changing the price of his patented device—the patented furnace in the present instance.

[3, 4] The patent law is not the source of a patentee's right to fix the price of his patented article, nor of the right himself to make, use and vend the article; these are natural or inherent rights of the patentee. As Judge Denison said, when speaking for this court in Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 584, 112 C. C. A. 185:

"A patent is not the grant of a right to make or use or sell. It does not, directly or indirectly, imply any such right. It grants only the right to exclude others."

And see Bloomer v. McQuewan, 55 U. S. (14 How.) 539, 548, 14 L. Ed. 532; Paper Bag Patent Case, 210 U. S. 405, 425, 28 Sup. Ct. 748, 52 L. Ed. 1122; Fuller v. Berger, 120 Fed. 274, 278, 56 C. C. A. 588, 65 L. R. A. 381; Macomber on Fixed Law of Patents (2d Ed.) 687.

The patent law is, however, the source of the patentee's right to exclude others, and so the entire or partial disposal of this right is involved in any transaction requiring payment of a license fee. This exclusive right is, of course, a franchise, possessing the qualities and characteristics of property during the life of the patent, and may be held and dealt with like any other kind of property belonging to the patentee. Wilson v. Rousseau, 45 U. S. (4 How.) 645, 673, 11 L. Ed. 1141; Hollister v. Benedict Mfg. Co., 113 U. S. 59, 67, 5 Sup. Ct. 717, 28 L. Ed. 901; Bement v. National Harrow Co., 186 U. S. 88 to 90, 22 Sup. Ct. 747, 46 L. Ed. 1058; Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 648, 35 Sup. Ct. 221, 59 L. Ed. 398; United States v. American Bell Tel. Co. (C. C.) 29 Fed. 17, 43 (opinion by Circuit Judge, later Mr. Justice, Jackson).

The right, then, of a patentee to select the amount he will charge as a license fee is an incident to his absolute ownership and power to dispose of his exclusive franchise, his property; and, so far as amount of the license fee is concerned, this right cannot be differentiated from

the inherent right of the patentee to fix the selling price of his patented article. Both rights derive their ultimate sanction through acceptance, and consequently in contract or agreement. Macomber correctly states the rule when he says (page 825): "Royalties arise out of contract and agreement." It results that the assertion of a liquidated claim cannot be sustained, and that the rule applicable to the settlement of liquidated claims need not be considered.

What, then, was the effect of the transaction which involved the acceptance of appellee's check, the collection and retention of the money it represented, and the failure to sign and return the voucher? We think Judge Day was right in holding that the transaction amounted to an accord and satisfaction. It is said that when appellee sent its check in July, 1913, there never had been any dispute between the parties as to the amount of the license fee; but according to this record the understood license fee was $250 for each of the furnaces. This was shown, not only by the February account, but also by the previous course of dealing between the parties, already alluded to, in respect of four other furnaces; and if it be assumed that appellee had notice of the purpose to demand an increased license fee, it is a mistake to say that the amount was not in dispute. It is also said that at the time the check was sent there was no "dispute between the parties as to the validity of the patent or the infringement of it"; and yet, in addition to what has already been pointed out, the first assignment of error is based on the claim that the evidence shows that appellee refused to pay the account rendered in February, 1910, "because complainants' patent was not valid, and because the furnaces used * * * did not infringe" the patent. There is nothing to show that these differences between the parties were composed until the check was sent and the money it represented was received and retained as stated.

It is not necessary to consider the effect of appellee's refusal in December, 1910, to pay the invoice of the previous February, since the refusal at last was "until" appellee became "convinced, either by the decree of the court or otherwise," that it was "infringing on any of their rights"; for, conceding that this amounted to a rejection of appellant's offer of February, 1910, the appellee's letter of July 15, 1913, inclosing its check and voucher, was in effect a distinct offer of settlement alike of the claim and the dispute. It was open to appellants to reject this offer, but they could not both accept and reject. The language of the check and that of the voucher plainly disclosed a conditional proposal to make a full and final settlement; and this could not be frustrated simply by presenting a new and enlarged account, with a credit thereon of the amount of the check. The retention of the money was an acceptance of the condition upon which it was tendered. The transaction thus comprised the essential and familiar elements of an accord and satisfaction. United States Bobbin & Shuttle Co. v. Thissell, 137 Fed. 1 and 3, 69 C. C. A. 651, and citations (C. C. A. 1st Cir.), writ of certiorari denied 199 U. S. 608, 26 Sup. Ct. 749, 50 L. Ed. 331; Thissell v. United States Bobbin & Shuttle Co., 157 Fed. 1005, 85 C. C. A. 680 (C. C. A. 1st Cir.); In re D. H. McBride & Co. (D. C.) 132 Fed. 285, 287, 289; Grain & Hay

Co. v. Conger, 83 Ohio St. 169, syllabus, 171, 174, 93 N. E. 892, 32 L. R. A. (N. S.) 380; Richardson v. Taylor, 100 Me. 175, 177, 60 Atl. 796; Nassoiy v. Tomlinson, 148 N. Y. 326, 329, 331, 42 N. E. 715, 51 Am. St. Rep. 695; Canton Coal Co. v. Parlin, etc., Co., 215 Ill. 244, 247, 74 N. E. 143, 106 Am. St. Rep. 162; Jenkins v. Nat. Mut. B. & L. Ass'n, 111 Ga. 732, 734, 36 S. E. 945; Cunningham Co. v. Rauch-Darragh Grain Co., 98 Ark. 269, 273, 135 S. W. 831; Williams v. Bienenzucht, 54 Misc. Rep. 209, 104 N. Y. Supp. 438; Knapp & Co. v. Syrup Co., 137 Mo. App. 472, 478, 119 S. W. 38; Bass Dry Goods Co. v. Roberts Coal Co., 4 Ga. App. 520, 521, 61 S. E. 1134.

Decree affirmed, with costs.