[No. 2971. Oct. 20, 1926.]

BUEL v. KANSAS CITY LIFE INS. CO.

[250 Pac. 635]

SYLLABUS BY THE COURT

1. Medical diagnosis made during treatment, and adhered to at the trial, is substantial evidence to support a finding as to cause of death.

2. Death from milk sickness or alkali poisoning from drinking milk from cows which had grazed on goldenrod is within the terms of a life policy indemnifying against death resulting ''from the effects of an injury, through external, violent and accidental cause,'' even though such cause be considered an infectious disease, the product of a known bacillus.

3. A $2,000 life insurance policy provided double indemnity for accidental death. Disclaiming liability as for accidental death, but not for the $2,000, the insurer tendered and the beneficiary accepted that sum in full

---

[1] 1CJ p. 505 n. 49.    [2] 1CJ p. 432 n. 12, 14.    [3] 1CJ p. 482 n. 16 New; p. 539 n. 74; p. 540 n. 75.

settlement. **Held**, not an accord and satisfaction," barring recovery for the balance.

Appeal from District Court, Eddy County; Brice, Judge.

Action by Luella Buel against the Kansas City Life Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Reid, Hervey & Iden, of Albuquerque, for appellant.

J. B. Atkeson and L. T. Atkeson, both of Artesia, for appellee.

OPINION OF THE COURT

WATSON, J. Appellee was the beneficiary.in an insurance policy issued by appellant upon the life of appellee's son, in the sum of $2,000. Attached to the policy was a double indemnity rider, providing that—

"If * * * the death of the insured. * * * should result from the effects of an injury, through external, violent and accidental cause, * * * the amount payable herein will be four thousand dollars."

As to the cause of death, the trial court found as follows:

"(4) That the said Ralph E. Buell died on the 26th day of Sepember, 1922; that his death was the result of what is commonly known as 'milk sickness,' or alkali poisoning, which was caused by the said Ralph E. Buell drinking milk from a cow or cows that had grazed upon a weed known as goldenrod, from the effects of which said milk was contaminated in some manner, the drinking of which milk caused his death."

Proofs of loss having been furnished, appellant forwarded its draft for $2,000, which appellee accepted, surrendering the policy and signing the printed receipt thereon, to the effect that she received said $2,000 in full of all claims whatsoever under the said policy, and in consideration of said sum surrendered all her right, title, and interest in and to the same, and forever released appellant from all liability to her thereunder.

The circumstances concerning this payment and release were found by the trial court to be substantially

as follows: Soon after the death of the insured, appellee discovered the existence of the double indemnity rider, and thereupon caused inquiry to be made of three attorneys as to appellant's liability under the circumstances. Two of the attorneys were of opinion that she was not entitled to the double indemnity, and the other was of opinion that she was so entitled; all stating, however, that the question required investigation before giving an opinion that should be acted upon. Thereafter appellee and her husband met appellant's agent at the First National Bank of Artesia, where appellee did her banking business, and the $2,000 check was tendered to appellee and accepted by her. Appellant's agent and the president of the bank, of whom appellee inquired if she was not entitled to the double indemnity, stated that, in their opinion, she was not so entitled, although they did not know; the president of the bank advising her to accept the $2,000 check, and both advising her that, if she did so, she would not have any further claim against appellant. Appellant would not have delivered the $2,000 check had appellee not signed the receipt and delivered the policy; and appellee, in doing so, intended to accept said check in full payment of the policy. No fraudulent representations were made whereby appellee was induced to execute the release and surrender the policy.

Thereafter appellee commenced this suit to recover the additional sum of $2,000. She was awarded judgment therefor, from which this appeal has been perfected.

Three propositions are here advanced as error: (1) That there is no evidence to support finding 4 above set forth; (2) that finding 4 does not support a conclusion that appellant is liable under the double indemnity rider; (3) that the facts found by the trial court constitute accord and satisfaction. These propositions we shall consider in the order stated.

[1] Appellant contends that the evidence upon which the court made finding No. 4 is speculative, con-

jectural, and theoretical, and thus not such substantial evidence as is required to support a finding of fact. We have carefully reviewed the evidence, but do not think it would serve any good purpose to set it forth. Suffice it to say that the attending physicians at the time diagnosed the case in accordance with the court's finding. They remained of the same opinion at the time of the trial. It seems clear that such evidence is not to be considered unsubstantial.

[2] Evidence was adduced tending to show that milk sickness is an infectious disease; is considered a fatal disease; that it occurs in epidemics; that patients have relapses; that the germ causing such disease has been isolated, and is known to the medical profession as bacillus lactamorbi. Relying upon this evidence, appellant contended at the trial, and now contends, that the cause of death was shown to be an infectious disease like typhoid fever, and not the effects of an injury through external, violent, and accidental cause.

Referring to the memorandum of the trial judge, we find that it was his opinion that the medical authorities know but little about milk sickness. He did not reject the germ theory, but was evidently unconvinced by the evidence adduced to support it. He held that even if the germ theory is correct, the cause of death is within the provision for double indemnity.

Appellant does not seriously question the practically uniform holding that death from poison, unintentionally taken, would be within the terms of this policy. So we find it unnecessary to cite the many decisions to that effect. It does contend, however, that this policy does not contemplate liability for death from disease, and that if milk sickness is a recognized infectious disease, similar to typhoid fever, the judgment cannot be upheld. To support this contention the able counsel cite but one case: Bacon (Steadman) v. U. S. Mutual Accident Association, 123 N. Y. 304, 25 N. E. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748, decided in 1890, the opinion having been written by Mr. Justice Peckham.

We think, therefore, that we may safely dispose of this contention upon a consideration of that case, the principles therein discussed, and the later authorities. It was there held that death from anthrax caused by contact with putrid or diseased animal matter was not insured against.

We first note that this rather early decision has not escaped criticism. Joyce says (Insurance, § 2878) that it is not in line with the authorities. Not that anthrax or malignant pustule is not a disease. But, admitting it to be such, it was but a link in the chain connecting the death with external, violent, and accidental means (contact with the putrid matter or bacillus) causing the death.

It is also to be noted that the policy in question in the Bacon Case, while creating liability for death from "bodily injuries effected through external, violent and accidental means," expressly provided that benefits should not extend to any "bodily injury of which there shall be no external and visible sign, nor to any bodily injury happening directly or indirectly in consequence of disease." As said in Hiers v. John A. Hull & Co., 178 App. Div. 350, 164 N. Y. S. 767, the court was dealing in the Bacon Case with the peculiar provisions of the policy, and it was also dealing with an occupational disease; it apparently being the view of the later case that disease contracted incidentally to one's ordinary occupation is not so readily to be classified as accidental as one otherwise contracted. The Bacon Case has been often referred to in the later decisions; generally to distinguish it.

In the case at bar there is no express exclusion of liability for death resulting from disease. Whether milk sickness is a disease is entirely immaterial, unless that fact of itself precludes a holding that it effected an injury through external, violent, and accidental cause. If we are to admit, as is generally held, that there is liability for death resulting from the introduction into the system of a poisonous substance, injuring

the body by causing lesions of the organs, what good reason is there for denying liability where the same final result is produced by toxins, perhaps generated within the body, but caused by bacilli introduced from without? Such a distinction is not warranted by the decisions.

Death from ptomaine poisoning has frequently been held within such terms as we are here considering. Johnson v. Fidelity & Casualty Co., 184 Mich. 406, 151 N. W. 593, L. R. A. 1916A, 475; U. S. Casualty Co. v. Griffis, 186 Ind. 126, 114 N. E 83, L R. A. 1917F, 481.

For blood poisoning cases, see note to Cary v. Preferred Accident Ins. Co. (127 Wis. 67, 106 N. W. 1055, 115 Am. St. Rep. 997, 7 Ann. Cas. 484) 5 L. R. A. (N. S.) 926.

Perhaps the strongest case against appellant's contention is Christ v. Pacific Mutual Life Ins. Co., 312 Ill. 535, 114 N. E. 161, 35 A. L. R. 730, in which death from typhoid fever, resulting from drinking polluted water, not knowing the same to be polluted, was held death from violent, external, and accidental cause.

In Sullivan v. Modern Brotherhood, 167 Mich. 524 133 N. W. 486, 42 L. R. A. (N. S.) 140, Ann. Cas. 1913A, 1116, the court dealt with a clause of indemnity against "total * * * loss of the sight of an eye by accident." Liability was there adjudged for loss of the eye caused by gonococci splashed into it with suds from a washtub.

Aetna Life Ins. Co. v. Portland Gas & Coke Co., 229 F. 552, 144 C. A. 12, L. R. A. 1916D, 1027, dealt with an employer's liability policy indemnifying against "bodily injury accidentally received or suffered," and held that typhoid fever from drinking polluted water was such accidental bodily injury.

H. P. Hood & Sons v. Maryland Casualty Co., 206 Mass. 223, 92 N. E. 329, 30 L. R. A. (N. S.) 1192, 138 Am. St. Rep. 379, dealt with a similar policy, and held

within its terms the disease of glanders, contracted in caring for horses suffering from it. Here the Bacon Case was distinguished because of the express provision against liability for injury, of which no external and visible sign appeared or happening directly or indirectly from disease.

In U.'S. Casualty Co. v. Griffis, supra, although the policy did exempt from liability for injuries caused by disease, ptomaine poisoning was held within the term "bodily injury effected solely through external, violent, and accidental means."

Appellant admits that the courts have gone so far in their liberal construction of the term "violent, external and accidental" that it is difficult to draw the line between liability and nonliability. It urges, however, that, when it appears that the cause of death was a recognized infectious disease, there can be no liability. In Vennen v. New Dells Lbr. Co., 161 Wis. 370, 154 N. W. 640, L. R. A. 1916A, 273, Ann. Cas. 1918B, 293, decided under the Workmen's Compensation Act, it was held that typhoid fever contracted from drinking water was "a personal injury accidentally sustained." There the court endeavored to draw such a line of distinction. It places it "between disease resulting from accidental injury and disease which results from an ideopathic condition of the system, and not attributable to some accidental agency growing out of the employment." See, also, Brintons, Ltd., v. Turvey (House of Lords) 2 Ann. Cas. 137, the result of which is directly contrary to that of the Bacon Case.

The foregoing illustrations we think sufficient to show that the judgment of the trial court should not be overturned upon the ground here being considered, unless we are to get out of line with the later and more numerous decisions. Even if we entertained the opinion that the courts, following the rule of liberal construction applicable, had gone beyond proper bounds, we should feel that we ought to follow the great weight of authority in a case of this kind. The meaning of such

a policy has been developed gradually by a course of judicial decisions, which, it is not to be doubted, has been observed with interest by appellant and other corporations engaged in the same business; and, as they continue to issue such policies, it is but fair and reasonable to assume that they have contracted with reference to the meaning of the words they employ, as laid down by the courts. Such a view was expressed by Thayer, Circuit Judge, in Fidelity & Casualty Co. v. Lowenstein, 97 F. 19, 38 C. C. A. 29, 46 L. R. A. 450, and seems to be sound.

[3] The trial judge considered that the release, signed by the appellee, did not constitute an accord and satisfaction barring a recovery. His theory was that appellant's liability for $2,000, in any event, was not disputed and, that the payment of that sum was no consideration for a release of the additional sum.

It is the general rule that a receipt in full, given on payment of part of a liquidated and undisputed debt, does not of itself preclude recovery of the balance. Case note 5 Ann. Cas. 525; Armijo v. Abeytia, 5 N. M. 533, 25 P. 777; Frazier v. Ray, 29 N. M. 121, 219 P. 492. The theory is well understood; being that accord and satisfaction, like other contracts, requires consideration to support it; and that, if a debt is liquidated and undisputed, the payment of part of it is no consideration for the release of the balance.

Of recent years, some courts have questioned the wisdom of this rule, since it tends to unsettle and discourage transactions intended as compromises and settlements. It has been said that the slightest consideration discoverable will be seized upon as sufficient to uphold the release as an accord and satisfaction. 1 R. C. L. 184—186.

Where a part of a claim is conceded, and a part is in dispute, the authorities differ whether payment of the part conceded, received in discharge of the whole is good accord and satisfaction. It is said in case note to Melroy v. Kemmerer, 11 L. R. A. (N. S.) 1022, that the

present tendency is so to consider it. In commenting on that tendency, in case note to Demeules v. Jewel Tea Co., 14 L. R. A. (N. S.) 954, it was said to be "probably due, not to a perception of any logical distinction between such a case and one where part payment is made of a claim the whole of which is conceded, but rather to the growing dissatisfaction with the rule which holds that the part payment, even in the latter case, does not constitute a sufficient consideration for the release of the entire claim, and the disposition to grasp any fact or circumstance which will enable the court to take a case out of that rule." See, also, 1 R. C. L. 196.

The courts have had great difficulty with this question. It does not seem possible to harmonize the decisions. If the tendency be as stated, the resulting rule is illogical. It is influenced by the supposed importance of encouraging and upholding compromises. That is undoubtedly a proper consideration. But compromise implies mutual concession. When only one of the parties makes concession, there is, in reality, no compromise. Dissenting opinion of Mason, J., in Neely v. Thompson, 68 Kan. 193, 75 P. 117. So long as we adhere to the general rule that part payment of a liquidated or undisputed demand is not accord and satisfaction, we hesitate to accept the doctrine that payment of the conceded part of a claim is consideration for a release of the balance which is in dispute. Better, in our judgment (as suggested in Brown v. Kern, 21 Wash. 211, 57 P. 798, and as done in Clayton v. Clark, 74 Miss. 499, 21 So. 535, 22 So. 189, 37 L. R. A. 771, 60 Am. St. Rep. 521), repudiate the rule that destroys its operation by illogical distinctions. Some states have done so by statute.

No doubt it would be convenient to tighten the rule as to settlements; thus avoiding considerable litigation. It should not be overlooked, however, that the rule objected to does not affect any case of real settlement— mutual concession; and that if we were to follow the

so-called "tendency," we should smother under a rule of convenience many meritorious causes of action.

It is appellant's contention that but a single claim arose under this policy; that the amount was in dispute, either $4,000 or $2,000; that, according to the "tendency" of decision, the claim could be compromised by payment of the smaller sum. We have indicated our disapproval of the principle urged. Counsel also contend that the trial court incorrectly treated the settlement "piecemeal," distinguishing between the death loss and the double indemnity liability. As we view it, this is but another way of stating the same proposition, and needs no separate treatment. Admitting, for the purposes of this decision, that the claim is to be treated as a whole, we have to determine whether it was liquidated in the sense in which that term is employed in connection with accord and satisfaction, and whether there was in fact any consideration for the release of the additional liability.

Counsel cite Manhattan Life Ins. Co. v. Burke, 69 Ohio St. 294, 70 N. E. 74, 100 Am. St. Rep. 666, where it was considered that a life insurance policy is improperly classed as a liquidated demand because there may be, and often are, defenses to a recovery. The correctness of the result in that case we do not doubt. There was a dispute as to any liability. The payment made was a concession, and, hence, was consideration. If the mere possibility of a defense is to exclude a debt from the liquidated class, the statement is correct; but, according to that criterion, the class of liquidated debts would be small. In statements of the rule we find the word "undisputed" nearly always coupled with the word "liquidated." Hunt on Accord and Satisfaction, § 72; Frazier v. Ray, supra; Farmers' & Mechanics' Life Assoc. v. Caine, 224 Ill. 599, 79 N. E. 956; Harms v. Fidelity & Casualty Co., 172 Mo. App. 241, 157 S W. 1046; Northwestern Life Ins. Co. v. Blasingame, 38 Tex. Civ. App. 402, 85 S. W. 819; Rauen v. Prudential Life Ins Co., 129 Iowa, 725, 106 N. W. 198.

Joyce says ("Insurance," § 3465a), there is "not a liquidated demand * * * where there is a dispute whether liability under it exists." Without further citation, we think we may safely say that the word "liquidated" has usually been employed in a loose sense, and that the decisive question is not the possibility of a defense, but whether there was a controversy in good faith.

"The word 'liquidated,' in the sense of the rule relied on by counsel" (with respect to accord and satisfaction) "signifies that the amount claimed has been ascertained and agreed on or fixed by operation of law." Swindell v. Youngstown Sheet & Tube Co., 230 F. 438, 144 C. C. A. 580.

If the general rule be considered as applying to all liquidated claims, then, as considered in Rauen v. Prudential Life Ins. Co., supra, an exception arises where liability is disputed. As we have seen, however, the general rule is usually stated as applying only to claims which are both liquidated and undisputed.

In the case at bar it cannot be questioned that the parties agreed, by the policy, upon the amount of the indemnity. There never was dispute as to liability for $2,000 because of the death of the insured. There was dispute as to any liability for accidental death, but none as to the amount to be paid if the death were accidental. By the payment made, appellee obtained nothing to which she was not entitled, and appellant gave up nothing it could rightfully retain. If the claims were to be considered separately, the death claim was liquidated and undisputed; the accident claim liquidated and disputed. If it be treated as a whole, the larger amount was liquidated, and the smaller amount paid was conceded. However viewed, we find it impossible to locate the consideration for the release of the amount here sued for. This conclusion we think well supported by authority.

In Goodson v. National Masonic Accident Assoc., 91 Mo. App. 339, the insured was a class-one member of the association. The certificate provided that for injury received while using firearms no greater benefit should

be paid than named in class 6.  The death benefit for class one was $5,000; for class 6 $1,000.  Death occurred from the accidental discharge of a pistol in the hands of the insured.  The association disclaimed liability for more than $1,000.  The beneficiary, acquiescing, settled for that sum, and gave receipt in full for all claims under the policy.  Discussing the effect of the release, the court said:

"But defendant insists that when the payment of one thousand dollars was admitted that that was a consideration.  We are not of that opinion.  We have already seen that under the contract of insurance the defendant company owed Mrs. Graves the fixed sum of five thousand dollars.  This was a liquidated sum and could not be discharged by the smaller amount unless there was some consideration for it.  To say that the payment of the less sum was the cinsideration, is to argue in a circle.  In determining whether there was a consideration the question is, What was the legal benefit to Mrs. Graves? or else, What was the loss to the defendant by the payment of one thousand dollars in discharge of five thousand?  She certainly did not gain by it, and defendant did not lose by it, since it was only one-fifth of what it rightfully owed.  And so it has many times been held that the payment of a sum less than a liquidated demand is no consideration for a discharge of the whole demand:  Winters [Winter] v. Railway, 73 Mo. App. 173, 194; s. c., 160 Mo. 159, [61 S. W. 606]; Henson v. Stever, 69 Mo. App. 136.  And this is true even though the creditor, as in this case, gives a receipt for the whole agreeing therein to receive it for the whole.  Riley v. Kershaw, 52 Mo. 224.

"But the further insistence is, that when one is tendered a sum of money on condition that it be taken in full of the demand and he accepts the sum tendered he also, ipso facto, accepts the condition.  We so ruled in St. Joseph School Board v. Hull, 72 Mo. App. 403.  But that rule presupposes there is a dispute or disagreement, in good faith, as to the amount of the demand. The rule has no application where a part of a claim is accepted under the mistaken view that it was the whole claim.  That was this case.  Mrs. Graves was shown defendant's by-law which made her claim only one thousand dollars on account of the manner of her husband's death.  There was no dispute about it.  There was no tender coupled with a condition.  Defendant said to her that it only owed her one thousand dollars and she, laboring under a mistake, thought defendant was right and took the money.  Such state of facts leaves no room for the application of the rule stated above."

A similar case is Knights Templars & Masons Life

Ins. Co. v. Crayton, 209 Ill. 550, 70 N. E. 1066. Under the policy there in question, if the insured committed suicide, the beneficiary was entitled only to the return of premiums. If he did not commit suicide, the insured was entitled to the return of premiums and $5,-000. On the theory of suicide, settlement was made by the return of the premiums. The court held that the release of liability for the additional $5,000 was without consideration. Tyler v. Odd Fellows' Mutual Benefit Assoc., 145 Mass. 134, 13 N. E. 360, was cited.

In Weidner v. Standard Life Accident Ins. Co., 130 Wis. 10, 110 N. W. 246, the policy provided for $3,000 to be paid in case of death from accident, but only one-tenth thereof if death should be due to injuries inflicted by others, except in case of assault committed for the sole purposes of burglary or robbery. The disputed question was the purpose of an assault causing the death of the insured. It was held that payment of $300 and full release was not accord and satisfaction.

In Prudential Ins. Co. of America v. Cunningham, 103 Md. 319, 63 A. 359, the dispute was as to the age of the insured. Under one contention $1,000 was payable; under the other, but $400. A receipt in full of all claims under the policy given on payment of the lesser sum was held not to bar recovery of the balance, since, being without consideration, there was no accord and satisfaction.

In Woodall v. Pacific Mutual Life Ins. Co. (Tex. Civ. App.) 79 S. W. 1090, it was said:

"Payment by a debtor of a liquidated amount, presently due, and to which he has no defense that can be urged in good faith or with color of right, is not by itself a sufficient consideration to sustain a release by the creditor of other unliquidated claims against the debtor. * * *There being no consideration for the release, it is immaterial whether it was fraudulently obtained by the defendant, or whether the plaintiff knew of its contents, or failed to exercise reasonable diligence in ascertaining its import. * * *"

In Fire Insurance Assoc. v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 35 L. Ed. 860, plaintiffs were insured against loss by fire on a vessel. The adjuster sepa/

rated the loss into two classes; namely, the direct loss by fire and the incidental cost of raising the vessel, she having been scuttled and sunk to extinguish the fire. The insurer paid the exact amount adjusted for direct loss, and disclaimed liability for the incidental loss. The insured accepted the amount, and gave receipt in full satisfaction of claims for loss by fire, and agreed that "said policy is hereby canceled in full and surrendered to said company." It was held that, as to the claim for incidental loss, there was no consideration to support the release. The court considered the debt as two distinct and separate claims. It did not concern itself as to whether the debt, or part of it, could strictly be considered liquidated. It said:

"If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void."

In Chicago, Milwaukee, etc., R. R. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099, cited by appellant, Fire Ins. Co. v. Wickham, supra, was mentioned not disapprovingly. Although a different result was reached, and several of the cases upon which appellant relies were cited, it was not deemed necessary to overrule the Wickham Case. In the Clark Case, there was plainly consideration for the release for that part of the claim not paid.

Although unable to harmonize our conclusion with the decisions of some courts which, while admitting, deprecate, the general rule above stated, and seek to limit it; we are of opinion that the learned trial judge correctly applied it in this case, and that his ruling could not have been otherwise without departure from the true principles upon which the rule is based.

Unable to accede to any of appellant's contentions,

we affirm the judgment and remand the cause, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.