ALEX M. HAMBURG, Appellant, Impleaded with JOHN BAUER,
Plaintiff, *v.* FRANCIS A. CUNDILL, Respondent, Impleaded with
A. ISABELL CUNDILL, Defendant.

Second Department, February 25, 1927.

Contracts — action on contract whereby plaintiff agreed to prosecute
claims for reduction in State and Federal income taxes of defendants —
plaintiff's fee was to be twenty-five per cent of reduction — finding of
court that amount of reduction was as contended by plaintiff is proper
— defendants failed to make out defense of payment or account stated
— defense of accord and satisfaction was not proven — judgment
directed for plaintiff.

This is an action to recover twenty-five per cent of reductions in defendants'
Federal and State income taxes, which plaintiff procured.   The contract between
the plaintiff and the defendants provided that the defendants would pay twenty-
five per cent of the amount of all reductions for the year 1919 and for the fiscal
year July 1, 1919, to July 1, 1920.   The defendants' contention is that the
entire year 1920 should be taken into consideration in determining the amount
of reductions, but the court properly found that the amount of reductions should
be determined according to the plaintiff's theory, and that the entire year 1920
should not be taken into consideration.

The defense of payment or an account stated cannot be sustained.   It appears
that the defendants submitted a statement to the plaintiff which statement
showed the amount of reductions on their theory, and that they also tendered
a check to the plaintiff for twenty-five per cent of the amount which they claimed
their taxes had been reduced.   But it appears that the plaintiff promptly
objected to the statement and contended that the amount of the check did not
pay him the full amount to which he was entitled.   There was nothing in the
statement submitted by the defendant, or upon the check, to show that the
check was tendered in full payment, nor was there any testimony to that effect.
The mere fact that the plaintiff did accept the check and put it through his
bank does not sustain the defense.

In view of the findings of the court that the contract was not ambiguous, it would
seem that the debt was liquidated and that the acceptance of a lesser amount
by the plaintiff would not bar him from the right to sue for and recover the
balance.

Furthermore, the defense of accord and satisfaction, if it were pleaded, is not sus-
tained by the evidence.

Under the circumstances, the Appellate Division directs judgment for the plaintiff
for the balance of the claim.

APPEAL by the plaintiff, Alex M. Hamburg, from a judgment
of the Supreme Court in favor of the defendant Francis A. Cundill,
entered in the office of the clerk of the county of Kings on the
9th day of March, 1926, upon the decision of the court rendered
after a trial before the court, a jury having been waived.

At the trial, the defendant, John Bauer, through his attorney,

withdraw his answer and stated that he was appearing as a party plaintiff.

*W. M. K. Olcott* [*Hyman Dominitz* and *B. A. Moynahan* with him on the brief], for the appellant.

*James Madison Blackwell,* for the respondent.

KELLY, P. J.    The learned trial justice did not hand down any written opinion in deciding the case, but he stated his views very clearly at the close of the trial.    And in the course of the trial, no jury being present, the court and counsel freely discussed the respective claims of the parties.    It is very apparent that there was no dispute about the plaintiff's figures.    As the learned judge said:  " We do not differ on the figures at all.    Mr. Blackwell [defendant's counsel]: No, not at all.    The Court: If your contention is not sound, the plaintiff is entitled to whatever he claims?    Mr. Blackwell: Yes, there is no question as to the amount.    The Court: And if the contention is sound, he is not entitled to anything.    Now we have got it boiled right down."

The plaintiffs, Hamburg and his associate Bauer, allege that on December 17, 1920, an agreement was made with the defendants by which plaintiffs were employed to prosecute claims for the reduction of the Federal and State income taxes of the defendants Cundill " for the calendar year 1919," says the complaint, which is not exact, and the defendants agreed to pay plaintiffs a retainer and " 25% of the amount of any reduction of the liability of the defendants Cundill for such income taxes in full payment of the services to be rendered by the plaintiff and the defendant Bauer."    The complaint goes on to allege that the plaintiffs entered on the performance of the contract and succeeded in obtaining an allowance of $55,186.10 to the defendants, by reason of which there was due plaintiffs one-quarter of that amount, viz., $13,796.52; that the defendants paid or were entitled to credit for $1,691.24, leaving a balance due of $12,105.28.

The defendant Francis A. Cundill answered admitting the contract, alleging, however, " that the said claims were for the abatement, refunding and recovery of Federal and New York income taxes for the calendar year 1919 and the fiscal year from June 1st, 1919, to June 1st, 1920."    The defendant admits that the plaintiffs filed and prosecuted the claims for the reduction of the income taxes, but denies that the terms and conditions of the agreement are as alleged in the complaint, and he denies the allegation that plaintiffs secured the reduction of $55,186.10.    He admits payment to plaintiffs of the sum of $1,691.24 as alleged, but pleads that a " much larger sum " was paid.

Then the defendant sets out a separate defense pleading his version of the contract of employment, which he says had reference to the taxes " for the calendar year 1919 and the fiscal year extending from June 1st, 1919, to June 1st, 1920." He alleges that the firm of Francis A. Cundill & Co. have paid plaintiffs on account $2,307.94 instead of $1,691.24 as alleged in the complaint. He admits that plaintiffs prosecuted the claims successfully and that defendants received in abatement or refunding of taxes, $37,638.97 from the Federal government and $1,185.98 from the State. He says that thereupon there became due plaintiffs twenty-five per cent of the amount of the abatement, viz., $7,398.25. He pleads payment of said sum to plaintiffs.

For a separate defense he alleges:

" *Fifteenth.* That on or about the 12th day of June, 1923, and before the commencement of this action, Francis A. Cundill & Co., and Francis A. Cundill and A. Isabell Cundill accounted with the plaintiff and the defendant Bauer as to all matters and things alleged in the complaint and paid over to the plaintiff and the defendant Bauer all moneys due and owing by Francis A. Cundill & Co., Francis A. Cundill and A. Isabell Cundill on account thereof."

So it will be seen that the issues on the pleadings were, (1) what was the amount of the abatement secured on which the twenty-five per cent was to be calculated; (2) the amount of credit for payments made by defendants on account; (3) was there an account stated between the parties and payment made to the plaintiffs of the amount found due by such account stated?

The contract between the parties was in the form of a letter written to plaintiffs by Francis A. Cundill & Co., as follows:

" *December* 17, 1920.

" Mr. JOHN BAUER,
" Mr. ALEX M. HAMBURG:

" GENTLEMEN.— Confirming our verbal understanding, it is now understood between us that you will, jointly and severally, handle the case of abatement of taxes for the calendar year 1919 and the fiscal year June 1st, 1919/1920, as follows:

" We are to pay you a retaining fee of $100 and also to provide you with such expenses as are necessary for the prosecution of this case. We further agree that we will pay you 25% of the amount received if the case is successfully prosecuted from which, however, is to be deducted the retaining fee and the actual disbursements that may have been made. It is understood no expenses are to be incurred outside of those of ordinary detail without the consent and confirmation of the undersigned.

" It is further agreed that the above understanding will cover

also the case of Mrs. Cundill's Federal tax, and also the State taxes of myself and Mrs. Cundill should it later be mutually agreed that these cases are worth prosecuting.

" It is hardly necessary to say, as it is understood and agreed, that immediate action and prosecution of this case to a finality, will be taken.  " Very truly yours,

" FRANCIS A. CUNDILL & CO.,
" FRANCIS A. CUNDILL."

The learned trial justice held that there was no ambiguity about the contract. The defendants' counsel asserting (as he asserts in his points on this appeal) that in determining the amount of the abatement the defendants were entitled to consider the full calendar year 1920, the learned trial justice said: " It covers, on its face, two things. It covers the year 1919 and also a fiscal year that is split from the first of June in 1919 to the corresponding time in 1920. I do not know that there is any ambiguity. It may or may not have expressed what the parties contracted for, but I do not just get the ambiguity. I want to get it if it is there, and I want you to point it out to me. I am trying to have you show me the ambiguity that is on the face of the paper."

A long colloquy followed, defendants claiming in substance that they were entitled to offset increases in income taxes during the last half of 1920 against the deductions secured by the plaintiffs, and the court on the other hand insisting that there was nothing ambiguous about the contract and that plaintiffs' services were measured by the fiscal year ending on June 1, 1920. The court said to defendants' counsel:  " The Court: You are only arguing against the wisdom of such a contract. Of course, I cannot help you on that. I will agree that if the business man had had his eyes open and knew what he was doing, he might have seen that that was an unwise thing to do, but I cannot help you much on that score. Mr. Blackwell: If that is the case, all I can do is to offer my evidence as to the conversations that occurred. The Court: I think perhaps that is the thing to do. We do not differ on the figures at all. Mr. Blackwell: No, not at all." I do not think it is necessary to pursue the dispute between the parties as to the amount of the abatement secured upon which the plaintiffs' twenty-five per cent was to be computed.

The trial justice found at request of plaintiffs that as a result of plaintiffs' services a total allowance in tax liability of defendants was secured in the amount of $55,186.10; he found on request of plaintiffs that they had duly performed all the terms of the agreement of December 17, 1920, on their part to be performed (seventh

request of plaintiffs), and that by reason of the agreement and the services rendered there became due to the plaintiffs the sum of $13,796.52, representing twenty-five per cent of the recovery (eighth request of plaintiffs). And as a conclusion of law, at request of plaintiffs, he found that under the terms of the agreement there was due the plaintiffs the sum of $13,796.52.

I am inclined to agree with the learned trial justice in his interpretation of the contract and with his findings of fact as to the plaintiffs' performance of the services required of them and as to the amount of the reduction secured and the amount due the plaintiffs, but, as I have suggested heretofore, right or wrong, those were the facts found by the justice, that was the law of the case.

But at the end of the trial the learned justice dismissed the complaint on the ground that there was an account stated and that plaintiffs had accepted defendants' check for $7,398.25 in settlement of their valid claim for $13,796.52, less payments on account, $2,107.94. In other words, that plaintiffs agreed to give up $4,290.33.

In this I disagree with the learned justice. Here is what occurred at the end of the trial: " Mr. Blackwell: I renew the motions to dismiss. The Court: I will decide it on the merits. I have indicated plainly how I feel on the plaintiff's claim, but on this defense of accord and satisfaction I do not believe the plaintiff's witness when he says, ' I will take it on account and sue for the balance.' I think that check was offered in full settlement of the claim, and they had to take it or leave it, and they took it. I think they are barred by that so I give judgment for the defendant on that ground. Submit your findings, of course, so as to point out exactly the other point. Mr. Moynahan: The letters that are in evidence, that were produced — The Court: I have read them both. I do not think they change the situation at all. I think he had to take it or leave it, one or the other. Mr. Moynahan: At this time I would like to respectfully except to your Honor's ruling. The Court: That doesn't do you any good. You have to submit your findings and settle it on notice. Please do so as promptly as possible, while the facts are fresh in my mind."

I think the learned trial justice inadvertently used the words " defense of accord and satisfaction." There was no defense of " accord and satisfaction " pleaded; there was a plea of " account stated " and payment accepted by plaintiffs of the reduced amount in full.

Of course, there was a dispute between Cundill and Bauer as to the *amount* due the plaintiffs. Cundill thought that he had the right to offset against the reduction in the tax obtained by

plaintiffs for the period covered by the contract, alleged excess of taxes in a period subsequent to the terms of the contract, caused as he claimed by the method pursued by plaintiffs in securing the reduction. This was the basis of his claim that plaintiffs should receive the lesser amount shown by the check. When, immediately on receiving the checks, Bauer protested in his letter, Cundill replies, " would say that I cannot alter my original interpretation of the benefit received from your services in view of the following facts;" then he goes on to state his reasons, which have been declared invalid by the learned trial justice. Cundill gave up nothing by way of compromise. The " *dispute* " depended solely on the legal question whether under the agreement Cundill could set off against plaintiffs' undisputed figures, the taxes accruing *after* the term of the contract.

It appears that the court originally had some doubt whether an account stated had been properly pleaded. I quote from the record — Bauer on the stand: " By Mr. Blackwell: Q. Did you receive this check, together with this account, from Mr. Cundill (handing papers to the witness)? A. Yes. Mr. Blackwell: I offer it in evidence. Mr. Moynahan: That is objected to, if the Court please, as incompetent, irrelevant and immaterial. Payment is conceded. Mr. Blackwell: There is an account stated. The Court: You do not plead any account stated. Mr. Blackwell: If that is the case, I would like to move to amend the pleadings. The Court: I think I will exclude it. I will try this case. Mr. Blackwell: Exception. The Court: I guess you have found out before this what you are trying. Mr. Blackwell: I would like to have it marked for identification. (The papers referred to were marked ' Defendant's Exhibit D-1 for identification ' and ' Defendant's Exhibit D-2 for identification,' respectively.) Mr. Blackwell: Has the court examined my last separate defense. I plead an account stated there, if the Court please. The Court: No, I don't think so. You plead payment and that is not an account stated. Mr. Blackwell: We plead that there was a statement of account between the parties. The Court: Do you? Mr. Blackwell: I think that if the court will read this last paragraph — The Court: Well, I will read it again. Yes, I think you do. I will reverse myself. I think you are right. I will admit these papers. Mr. Moynahan: I respectfully except. (The papers referred to, having been previously marked ' Defendant's Exhibit D-1 for Identification ' and ' Defendant's Exhibit D-2 for Identification,' were received in evidence and marked ' Defendant's Exhibit D-1,' and ' Defendant's Exhibit D-2,' respectively.) "

Bauer says that Miss Sieger came to his office and handed him

the defendants' statement showing a credit to plaintiffs of $7,398.25, and the check. Bauer says: " I objected to this stated account and refused to take the check in payment until I — By Mr. Blackwell: Q. Tell us what you said. By the Court: Q. What did you say? You said that you would not take the check until what? A. Until I had a conference with Mr. Cundill about the matter. I immediately — * * * By the Court: Q. I didn't understand what you stated that you said to Mr. Cundill when you got this check or after you got it. What did you say to him or what did he say to you? You told us what you said to Miss Sieger. A. Yes. Q. But I didn't understand what you said to Mr. Cundill, if you did say something. A. I objected to the account and to the payment of the check as settling the account and I presented the claim. Then he told me — suggested that I should keep the check without prejudice to any other claims that I had. By Mr. Blackwell: Q. That is what you said to him? A. In substance. * * * Re-direct examination by Mr. Moynahan: Q. Mr. Bauer, just a further word: Did you write to Mr. Cundill after you had this conversation about this check and this alleged account? A. Yes, after the conference. Q. Did you receive a reply from him after you had written that letter. A. I did. Q. I show you this letter from Francis A. Cundill, dated June 14, 1923, and ask you if that is the letter you received? A. It is."

The letter written by Bauer to Cundill is dated June 14, 1923, after his interview with Cundill at which he protested against Cundill's statement and objected to the amount of the check, and is Exhibit 8. In substance it contains Bauer's interpretation of the agreement, and I repeat the court has found that Bauer was right.

Cundill's reply to Bauer's letter is also dated June 14, 1923. Again, I say that Cundill reiterates his " original interpretation of the benefit received from your services," and says he cannot alter his " *original* " interpretation. The learned court has found that Cundill's interpretation was wrong.

But the significant thing is that this correspondence was after Bauer had protested to Miss Sieger and after Bauer had protested to Cundill, and all this was evidently at the time the statement and check were delivered, or as near as was physically possible. It seems to me that on this evidence it could not be said that the statement sent to Bauer by Cundill was accepted by Bauer or that it filled the requisites of an account stated.

Miss Sieger testifies: " Shortly after I delivered Exhibits D-1 and E and the check for $7,398.25 Bauer came into Mr. Cundill's office and asked for approximately $4,000 more, but we, Mr. Cundill

and myself, reminded him of his agreement for 25 per cent. He made the admission that if he got all that he was asking for, it would amount to 35 per cent, and he made an offer to compromise at 50 per cent of the extra amount he asked for. Mr. Cundill and I both stated that there was nothing to compromise, as he was paid in full the 25 per cent agreed on. Mr. Moynahan: If the Court please, at this time I move to strike out that last answer as not binding on this defendant and as incompetent, irrelevant and immaterial. The Court: No. It refers to conversations with him. I will deny the motion. Mr. Moynahan: Exception."

It seems to me that this corroborates Bauer's evidence that he promptly objected to the check for $7,398.25 and asked for $4,000 additional, but " Mr. Cundill and I both stated that there was nothing to compromise."

The defendant Cundill testified as a witness in his own behalf. I pass over his interpretation of the contract, which was not accepted by the court. Under the findings and conclusions of law he sent a check to Bauer for $4,000 less than he owed him. He was questioned by the trial justice: " By the Court: Q. Tell us the talk you had with Bauer about these statements and the $7,000 check. A. After the delivery of the check to Mr. Bauer, he called at my office and remonstrated that the check was not in accordance with his understanding. I told him that it was in accordance with the understanding of the agreement — the intent of the agreement and the understanding which had been always understood, and that there was nothing more to be said. I said, ' How much do you expect to get out of it? ' He said he expected to get $14,000 out of it. I said, ' figuring that, it would amount to thirty-five per cent, and the amount agreed upon was twenty-five per cent.' He said, ' It is $14,000 that I expect to get,' admitting that it was thirty-five per cent that he expected to get, and not twenty-five per cent. Q. What was the rest of the talk? A. And then he left the office. Before he left he suggested a compromise of half the amount, or, roughly speaking, $2,000, to which I said that there was nothing to compromise; that we had an agreement, the record being done in my own staff, and that that was the understanding of the whole thing — that he was to get twenty-five per cent of what was saved by the whole transaction. By Mr. Blackwell: Q. Did you say to him to take this check on account or anything of that sort? A. No. By the Court: Q. What was said about that, if anything? A. I told him he could do what he wished to do — that he could do whatever he liked — and I was surprised that he put the check through. Q. Did he say that he would not take

it in full payment? A. He said that he would either compromise for $2,000 or claim the whole thing, and I said that was up to him — his option. My position was I would not compromise. By Mr. Blackwell: Q. Did you tell him to take this payment on account at all? A. I never said so, sir." Cundill says this conversation occurred " a long time ago. It was the day after the check was signed." Asked if Bauer ever said he would accept the $7,000 check in settlement, he answered, " No, he never said so."

It seems to me that there can be no doubt that the minds of the parties never met as to the statement and check prepared by Mr. Cundill. I think Cundill admits it when he says: " I told him he could do what he wished to do — that he could do whatever he liked — and I was surprised that he put the check through."

No one asked Bauer to testify further as to why he put the check through. He says that Cundill told him he should keep the check " without prejudice to any other claims that I had." It cannot be doubted that he was strenuously insisting that Mr. Cundill owed him some $4,000 in addition to the check for $7,398.25 — properly asserting a claim for that substantial amount, as the court has found. There is no notation on the check that it is in full payment.

But notwithstanding all this, the learned judge says: " I will decide it on the merits. I have indicated plainly how I feel on the plaintiff's claim, but on this defense of accord and satisfaction I do not believe the plaintiff's witness when he says ' I will take it on account and sue for the balance.' I think that check was offered in full settlement of the claim, and they had to take it or leave it, and they took it. I think they are barred by that, so I give judgment for the defendant on that ground." He said of the check, plaintiff had to " take it or leave it."

The correctness of this ruling is the only question before the court on this appeal.

The respondent says it is an elemental rule of an accord and satisfaction that any *unliquidated* claim may be settled by delivery of a check for a less amount if it is tendered and accepted in full payment of the account. (*Schnell* v. *Perlmon,* 238 N. Y. 362.) There is no dispute about this proposition.

But the appellant claims that the debt here was liquidated, and it seems to me there was some force in appellant's contention. The learned court says there was nothing ambiguous about the contract and he finds that twenty-five per cent of the savings secured to the defendants by plaintiffs' service was $13,796.52, and that less payments on account, there was a balance due plaintiffs of $11,488.58 instead of $7,398.25.

The respondent quotes from the opinion in the *Schnell Case* (*supra*): " The term ' liquidated,' therefore, when used in connection with the subject of accord and satisfaction has reference to a claim which the debtor does not dispute; a claim which he admits to be due but attempts to satisfy by the payment of a smaller amount. Thus in *Nassoiy* v. *Tomlinson* (148 N. Y. 326) this court said: ' A demand is not liquidated, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction.' " And the Court of Appeals sums up the matter (at p. 369), where it says: " Thus within all the cases the claim of the plaintiffs was not liquidated within the meaning of that term as used in this connection. It was a disputed claim. The plaintiffs knew it was disputed. They knew also that the checks and notes which they received and cashed were received in full payment of their disputed claim. They could not under these circumstances keep the money and reject the conditions attached to payment." Of course, if Bauer received this $7,398.25 check in full payment, the plaintiffs have no right to recover the balance due them. That is the issue of fact.

The appellant insists that " The trial court having ruled that the written contract entered into between the parties was clear and unambiguous, and having, in the decision, found that under said contract the plaintiffs had earned a fixed and liquidated sum of money, and the defendants having acquiesced in these meetings [word *meetings* should be *findings*] by failing to except thereto, or to appeal from that portion of the decision, the correctness of said rulings cannot be inquired into on this appeal.  *  *  * It follows that for the purpose of this appeal, the ruling of the trial court that the contract is unambiguous, that the plaintiffs had earned, under its express terms, the fixed sum of $13,796.52, and that said sum, less the credits to which defendants were entitled, was due to the plaintiffs at the time of the alleged account stated, was conclusive." The appellant argues that plaintiffs' claim was liquidated. He cites the United States Supreme Court in *Chicago, Milwaukee, etc., R. Co.* v. *Clark* (178 U. S. 353, 372): " The word ' liquidated ' is used in different senses, and as applicable here means made certain as to what and how much is due; made certain by agreement of parties or by operation of law." Counsel for appellant stresses the fact that there was no plea of accord and satisfaction in the answer interposed by the defendants.

He pleaded " payment," and " account stated," but I think appellant is right in arguing that there was no plea of " accord and satisfaction."

For the reasons already indicated I think defendants failed to make out a defense of payment or the defense of account stated.

Did they make out a case of accord and satisfaction? Volumes have been written on this subject. In the end it seems to me it gets down to the old basic question of the intention of the parties.

The evidence in the case is rather barren as to any demand made by plaintiffs for payment. Their work had been completed. They had performed services which entitled them to some $11,400 net after deductions of payments on account of expenses, etc. Mr. Cundill sits down and prepares a statement showing an indebtedness of but $7,400. He sends the statement to Bauer with a check for $7,398.25. There is nothing on the face of the statement or the check to show that the amount is in full payment. Cundill says he considered it as full payment, but the court has found that he was wrong. The court has found on the facts and the law that Cundill owed Bauer the larger amount.

The appellant has an interesting citation from Professor Williston in his points, going back to Coke and Lord Ellenborough. It appears that Lord ELLENBOROUGH said: " There must be some consideration for the relinquishment of the residue; something collateral to shew a possibility of benefit to the party relinquishing his further claim, otherwise the agreement is *nudum pactum*." (See 3 Willis. Cont. § 1851, citing *Fitch* v. *Sutton*, 5 East, 230, 232.)

In the case at bar Cundill was giving up nothing he was not obliged to give up. On the findings he owed not only $7,398.25, but $11,400. Bauer certainly got nothing for relinquishing $4,000 of a perfectly valid claim. It is said that he offered to compromise for $2,000. If Cundill had agreed and had paid the additional $2,000, I could see a case of accord and satisfaction.

The appellant cites the case of *Ryan* v. *Ward* (48 N. Y. 204, 206). There the court said: " By the finding of the referee this amount now sought to be recovered was, and is, actually due to the plaintiff. How has the debt been discharged? Not by payment; not in a settlement, by way of compromise, of disputed accounts. No such transaction took place. There was no dispute between the parties. Neither was asked at any time to yield anything claimed on his part. Neither party understood that there was any such concession. There was due to the plaintiff a sum, certain — say

$2,000, as an illustration. The defendants pay $1,500 and the plaintiff gives them a receipt in full for $2,000. If A. lends B. $2,000, and B. pays A. $1,500, which A. says, either orally or by writing, is in full of the loan, it, nevertheless, is not in full. A. may at once sue B. and recover the remaining $500. There is no consideration for the professed discharge. A man cannot, by the payment of $1,500, pay an admitted debt of $2,000. This has ever been the law. In such case nothing less than a technical release, under seal, can bar the recovery. (*Harrison* v. *Close*, 2 J. R. 448; *Seymour* v. *Minturn*, 17 id. 169; *Mech. Bk.* v. *Hazard*, 13 id. 353.) '' There is no evidence, oral or written, that Cundill sent the check in full payment of Bauer's claim. No letter accompanied the check or statement and Cundill makes no claim that Bauer ever said or intimated that he would accept the check in full payment. On the contrary, he immediately demanded the balance due.

In my opinion, no case of accord and satisfaction was made out. Indeed there is no formal finding of accord and satisfaction. The learned judge finds in his 16th finding of fact that there was an account stated and '' upon the statement of said account the said Francis A. Cundill paid to the plaintiff and the said defendant Bauer the said balance of $7,398.25, and the said plaintiff and the said defendant Bauer received and accepted the same in full satisfaction and discharge thereof.'' I am unable to agree with this finding of the learned justice. In my opinion, the evidence clearly shows that Bauer promptly disputed it.

The only fact urged in support of defendants' claim is plaintiff's retention and deposit of the check delivered to him by Miss Sieger at his office in the Municipal Building, New York. It is on this isolated fact that the learned court has dismissed the complaint. The learned court says: '' I think that check was offered in full settlement of the claim, and they had to take it or leave it, and they took it.''

We do not know what the workings of Mr. Cundill's mind were. Certainly there is no evidence, oral or written, that he advised Bauer that the check for $7,398.25 was offered in full settlement of a valid claim for $11,400. Miss Sieger said nothing of the kind. Cundill said nothing of the kind by letter or entry on the statement or the check. Bauer never admitted the correctness of the statement, nor did he agree to receive the check and forego his valid claim for the balance of $4,000. Bauer says that Cundill told him he could take the check without prejudice, but the learned judge says he does not believe Bauer in that respect. But Cundill, while denying that he made the statement, at no place testifies that he ever said to Bauer that the check was in full. Indeed he frankly

admits that he was surprised when he found that Bauer had deposited it.

My conclusion is that the finding of the learned trial justice that there was an account stated or that Bauer received the check in full satisfaction of his claim is contrary to the evidence. In my opinion, in view of the findings of fact and conclusions of law of the learned trial justice in favor of the validity of plaintiffs' claim, which findings were not excepted to by the defendant, this court should direct judgment for the plaintiff for the balance of the claim.

The judgment should be reversed on the law and the facts, with costs, and judgment directed for plaintiff for the sum of $4,290.33, with interest and costs, with reversal of the 16th finding of fact of the Special Term; and this court finds the facts as requested by the plaintiff in the 9th, 10th, 11th and 12th requests to find, and the 2d, 3d and 4th conclusions of law requested by the plaintiff.

MANNING, YOUNG and KAPPER, JJ., concur.

The parties having stipulated in writing that this case may be disposed of by a court of four, the decision is as follows:

Judgment reversed upon the law and the facts, with costs, and judgment directed for plaintiff for the sum of $4,290.33, with interest and costs, with reversal of the 16th finding of fact of the Special Term; and this court finds the facts as requested by the plaintiff in the 9th, 10th, 11th and 12th requests to find, and the 2d, 3d and 4th conclusions of law requested by the plaintiff. Settle order on notice.